(October 11, 1911.)

## GEORGE FARBER, Appellant, v. PAGE & MOTT LUMBER CO., Respondent.

[118 Pac. 664.]

ESTOPPEL—SILENCE AND LACHES—WHEN SILENCE MISLEADS.

(Syllabus by the court.)

1. Where L. Co. employed G. Bros. to cut and deliver a quantity of lumber for a specified price and supplied the employees with printed time checks, with the direction that they issue such time checks for labor and material and supplies, and these time checks bore the name of the L. Co. and were issued on such company, signed by one of the G. Bros. as foreman, and F. furnished G. Bros. supplies and took such time checks in return therefor and accepted time checks from laborers and employees of the company in exchange for goods and merchandise, and L. Co. paid such checks from time to time for many months and running into many hundreds of dollars and numbering some fifty or sixty, and F. had no notice that L. Co. did not intend to continue to pay such time checks, and the L. Co. thereafter refused to pay a number of such

checks on the grounds that G. Bros. had exhausted the amount of their contract price, and F. had no notice that G. Bros. were contractors for a fixed price, and L. Co. knew that F. was accepting the time checks for supplies and value; *held,* that L. Co. should in equity and good conscience be estopped from denying its liability or setting up the defense that the G. Bros. had been paid the full amount of their contract price.

2.   Where a person, knowing the facts, remains silent when he ought, in justice and good conscience, to speak up and make known the real truth of the situation, and where his silence is calculated to prove misleading and disastrous to an innocent party, and the innocent party acts in good faith upon the appearance of the situation, assuming the silence of the other party to be in conformity with the real facts of the transactions, equity and good conscience will estop the party who remains silent when he ought to have spoken from thereafter asserting the real facts when to do so will work a fraud upon such innocent party.

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. Fremont Wood, Judge.

Action by the plaintiff to recover on certain time checks. Judgment for the defendant and the plaintiff appealed. *Reversed.*

Chas. M. Kahn, for Appellant.

"Under all the law and evidence the appellant is entitled to a reversal, for the reason that the estoppel of respondent has been established.

"Whenever a party has by his own act, declaration, or omission deliberately and intentionally led another to believe a particular thing true and to act upon such belief, he cannot be permitted to deny it."   (Bigelow on Estoppel, 4th ed., 445; Herman on Estoppel, sec. 788; 16 Cyc. 679, 722–724; 11 Am. & Eng. Ency. of Law, 2d ed., 387; Pomeroy Eq. Jur., sec. 804.)

"Fundamental element of estoppel is that the party sought to be estopped has said or done something in reliance on which the person in whose favor the estoppel is invoked has acted or relied to his prejudice."   (*Maryland Telegraph & Tele-*

*phone Co. v. Ruth,* 106 Md. 644, 124 Am. St. 506, 68 Atl. 358, 14 L. R. A., N. S., 427, 14 Ann. Cas. 576; *Nell v. Dayton,* 43 Minn. 242, 45 N. W. 229, 230; *Branson v. Wirth,* 17 Wall. (U. S.) 32, 21 L. ed. 566; *Dickerson v. Colsgrove,* 100 U. S. 578, 25 L. ed. 618, 619; *Dolbeer v. Livingston,* 100 Cal. 617, 35 Pac. 328.)

Where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. (16 Cyc. 791, 792; Bigelow on Estoppel, sec. 632; 11 Am. & Eng. Ency, of Law, 2d ed., 427; Herman on Estoppel, sec. 776; *Martin v. Webb.* 110 U. S. 5, 3 Sup. Ct. 428, 28 L. ed. 49; *Carpy v. Dowdell,* 115 Cal. 677, 47 Pac. 695; *Scott v. Jackson,* 89 Cal. 258, 26 Pac. 899.)

"He who does not forbid what he can forbid seems to assent." (Herman on Estoppel, sec. 735; *Marshal v. Foltz,* 221 Pa. 570, 70 Atl. 857; *Priewe v. Wis. State Land & Imp. Co.,* 103 Wis. 537, 74 Am. St. 904, 79 N. W. 780.)

"Wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." (16 Cyc. 773; *Madden v. Caldwell Land Co.,* 16 Ida. 59, 100 Pac. 358, 21 L. R. A., N. S., 332; *Pennypacker v. Latimer,* 10 Ida. 625, 81 Pac. 55.)

"Whenever a person has held out another as his agent authorized to act for him in a given capacity, or has knowingly and without dissent permitted such other to act as his agent in such capacity, or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent, authorized to act in that capacity, his authority to such other to act for him in that capacity will be conclusively presumed, so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith and in the exercise of reasonable prudence." (Mechem, Agency, 84; also Thompson's Comm. on Corporations, sec. 4880; *Mosley v. Morgan,* 141 Ky. 557,

133 S. W. 226; *Jones Cotton Co. v. Snead* (Ala.), 53 So. 988; *Hubbard v. Tenbrook,* 124 Pa. 291, 10 Am. St. 585, 16 Atl. 817, 2 L. R. A. 823; *Over v. Schiffling,* 102 Ind. 191, 26 N. E. 91; *Rice v. Groffmann,* 56 Mo. 434.)

Paris Martin, for Respondent.

The appellant cannot invoke the doctrine of estoppel because he was not reasonably prudent. He did not exercise that degree of prudence which an ordinarily prudent man would have exercised under like circumstances. (*Gregory v. Loose* (Wash. 1898), 54 Pac. 33; *Van Allen v. Francis,* 123 Cal. 474; Clark & Skyles, Law of Agency, p. 140; *Davidson v. Jennings,* 27 Colo. 187, 83 Am. St. 49; *Moore v. Bowman,* 47 N. H. 494; *Douglass v. Craig,* 13 S. C. 371; 2 Herman on Estoppel, sec. 969.)

The fact that the appellant did not show that he knew that the printed order blanks were furnished by the respondent to the Guay Brothers precludes the appellant from using such fact as a basis of estoppel. Facts necessary to work an estoppel must appear affirmatively. (*Hill v. Epley,* 31 Pa. 331.)

Appellant did not make any inquiry disclosing to respondent that appellant was not fully cognizant of the true state of affairs and the true relations between respondent and the Guay Brothers, so there was no duty on the part of the respondent to speak. (77 Am. & Eng. Ency. of Law, 427.)

"It does not appear that the acts of the company which are supposed to have been sufficient to justify a belief in the agent's authority were known to the plaintiff, and if not, they could not have generated in his mind any belief on the subject of agency." (*Harris v. San Diego Flume Co.,* 87 Cal. 526.)

Representations made or acts done subsequent to the change of position by the other, which they do not invite or influence, will not operate as an estoppel. (77 Ency. of Law, 439.)

Where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.   (11 Am. & Eng. Ency. of Law, 2d ed., 434.)

AILSHIE, J.—This action was prosecuted by the appellant, George Farber, against the respondent company for the recovery of $1,543.47 on eighteen time checks.   The checks had been issued by one John Guay.   These time checks were issued to various parties for work and labor and supplies, and were duly assigned and delivered to the appellant herein. The plaintiff rested his right of recovery upon a state of facts which he claimed constituted an estoppel against the lumber company.   Judgment was entered in the lower court in favor of the defendant and the plaintiff has appealed.

During the years 1907, 1908 and 1909, James Guay, William Guay and John Guay were engaged in getting out logs in the vicinity of Pine, Idaho, for the Page & Mott Lumber Co.   It seems that the three brothers formed a partnership and that John was in charge of the work.   They were doing this work under contract which they had with the Page & Mott Lumber Co., the respondent herein.   For convenience we will hereafter refer to the respondent simply as the lumber company.   When they began the work, they issued a number of time checks which were written out on blank paper.   This in some way did not suit the lumber company, and so they prepared a printed form of time check and put them up in books of a hundred each, and supplied the Guays with these books as long as they needed them.   The evidence shows that during the prosecution of this work they furnished three books. These time checks were filled out in accordance with the facts in each particular transaction, and signed by John Guay as foreman and issued to the various workmen and those furnishing supplies and materials.   The following check issued to William Guay is set forth in the transcript, and it is stipulated that all the other seventeen are in the same form as this one (though issued to different persons):

"No. 1154.                            Dec. 5, 1908 [in writing].
                    PAGE & MOTT LUMBER CO.
Name: W. M. Guay [in writing].
No. of days ....... Rate per Mo. ....... Total, $125.00
.                                    [amount in writing]
Bal. on Interest on Logs and all Labor.......
                    [all in writing]
Camp Acct. Merchandise: Burning Brush.   ·
            [words 'burning brush' in writing]
Cash  drawn  ..................................
Other accounts ..................................
Board  .........................................
        Total Amt. Drawn.........................

Payable at Office.        Balance Due...............$125.00
                                        [amount in writing]
Name of Foreman:                        JOHN GUAY.
                    [Name 'John Guay' in writing.] "

The lumber company instructed the Guay Bros. to issue time checks on the blanks furnished them and that they would pay the same as they were presented. Checks were issued from time to time exceeding 200 in number. The appellant was running a general merchandise store at Pine, near where the Guay Bros. were carrying on their work, and the latter accordingly purchased their supplies from appellant and issued to him time checks drawn on the lumber company. Appellant also took in trade for goods and supplies a great many checks issued to laborers and others. It appears that he either received directly or purchased upwards of seventy of these time checks, varying in amounts from $1 to something like $500 each. Appellant was purchasing his goods and supplies from the Falk Mercantile Co. of Boise. He was also doing his banking business with the Boise City National Bank. As he received these time checks, he either sent them in to the Boise City National Bank for collection or to the Falk Mercantile Co. They were regularly paid from time

to time until the first two checks involved in this suit. They were received in December, 1908, and on the 14th of that month were sent in to the Boise City National Bank for collection. The lumber company, it seems, refused to pay them, and they were returned to appellant, who forwarded them on the 19th of the same month to the Falk Mercantile Co. The agent of the Falk Mercantile Co. presented the checks for payment, and the lumber company refused to pay any more of the checks. However, in a short time thereafter, the lumber company paid to the Falk Mercantile Co. the sum of $500 to be applied on the time checks then held by that company. This sum was sufficient to pay about 55 per cent on the number of checks then held by the Falk Mercantile Co. They notified Farber of the action of the company in making this partial payment.

One of the members of the firm composing the lumber company testified on the trial that along about the 5th of October preceding he had written a letter to appellant requesting a statement from him as to the Guay Bros. account and telling him that he "had better be careful about taking future time checks of the Guay Bros." He said he did not have a copy of this letter. The appellant denies receiving any such letter or ever having any word of warning from the lumber company or any intimation from them that John Guay was not authorized to draw these checks or that they did not intend to honor them. On the contrary, appellant testified that they had always paid the checks as he had sent them in, and that he knew the Guay Bros. were working for the lumber company, and that he supposed Guay was the agent of the lumber company and was authorized to represent them and issue time checks against the company.

Appellant also produced a letter written by the lumber company under date of December 19, 1908, and which date appears to have been subsequent to the time the first two of these time checks were presented by the bank and payment was refused. This letter of December 19th is as follows:

"Boise, Idaho, Dec. 19, 1908.

"Mr. Geo. Farber,

    Pine, Idaho.

"Dear Sir:—

"Enclosed please find our check No. 6673 for $38.00 in payment of Guay Bros. Time Checks to R. L. Turner, $10.50, Jan Engleman, $22.50, A. M. Percy, $5.00.

"Yours truly,

"PAGE & MOTT LUMBER CO."

It will be observed that the foregoing letter did not contain any intimation that the lumber company was not going to honor and pay these time checks, nor did it intimate that the appellant should in any way be on his guard or hesitate about taking up these checks. It rather indicated that the company recognized its liability on time checks issued by the Guay Bros., as it inclosed a check for $38 in payment of three time checks that had been issued by these people. Had the company previously notified him to be on his guard about taking these time checks, it would seem that this subsequent letter of December 19th would have made some reference to the matter or to the authority of the Guay Bros., or the fact that their credit was exhausted, or something of that kind. It was after the writing of this letter that the lumber company paid the $500 to the Falk Mercantile Co. to be applied on the several checks held by that company for collection.

It further appears, and indeed is admitted, that as late as June 25, 1909, John Guay drew forty-eight time checks on the lumber company, ranging in amounts from $1 to $400, that these time checks were all drawn at the company's office and were all paid by the company. They were drawn in the same manner and upon the same transaction as the previous time checks had been drawn. These checks were all drawn subsequent to June 25, 1909. The company claims, however, that these checks were paid in order to prevent the men from filing liens on the logs. They also claim that the $500 was paid to the Falk Mercantile Co. in order to prevent the filing of liens and a tie-up of the logs prior to their delivery at the lumber company's mill-pond. John Guay testifies that he had

been authorized to issue these time checks, and that the company furnished him the blanks for that purpose, and that they told him they would pay them as they came in. He says he told them that he would not make the log drive and deliver them in their pond unless they would agree to pay all these time checks, and that they thereupon agreed to do so.

The company lays some stress upon the fact that some eight or nine of these checks have the words "payable at office" and "Foreman" crossed out. They contend that they had instructed John Guay to cross out those words, while he, on the other hand, denies that and claims that they told him not to do so. He explains crossing out these words on some of the checks as a whim, and says, "I did it just because I took a notion to."

The facts and circumstances of this case bring it very close to the border line of estoppel. Our examination of the whole record in the case considered in the light of the opportunities which were afforded to both parties, the one to question or doubt these time checks and refrain from taking them and the other to give plain and adequate warning, leads us to the conclusion that the justice of this case is with the appellant. In determining a matter of this kind, it is necessary to take into consideration the custom and practice of the different parties and of persons generally under like circumstances, the class of business in which they were engaged, the usual and ordinary course and procedure in business pursued by persons similarly situated and surrounded. Here Farber was in a remote, rural, isolated community where he had been doing business for twenty years. Seeing the matter from his viewpoint, knowing the parties receiving these time checks as he had from time to time, and the respondent company having paid them regularly,—some fifty or sixty in number,—the action and conduct both of the lumber company and the Guay Bros. would naturally lead him to believe in good faith that the Guays were the agents of the lumber company and that he was perfectly safe in taking the time checks, and that they would be paid by the principal. The whole course of conduct pursued by the lumber company was a confirmation of this

belief.   It was calculated to lead him on and implant in him a faith which they would eventually attempt to blight to his irreparable injury. The lumber company knew what the Guay Bros. were doing. They knew that they were issuing the time checks right along on the blanks furnished by the company, and that these blanks would at least indicate to the one who received such time checks that they were drawn by the authority of the company and that Guay was their agent.   If the company were now allowed to successfully defend against these time checks and refuse to pay them, their action and conduct in not warning Farber would work a grievous and substantial fraud upon the latter.   This ought not to be allowed.

This court in *Madden v. Caldwell Land Co.,* 16 Ida. 59, 100 Pac. 358, 21 L. R. A., N. S., 332, in speaking of this principle of justice, said: "The rule is quite general, we think, that where one of two persons must suffer loss, that the loss should properly fall upon the one most culpable and who could most easily have avoided its consequences, and on whom the greater duty to discover the cause and defect rested."   (See, also, *Pennypacker v. Latimer,* 10 Ida. 625, 81 Pac. 55.)

Sometimes the silence of a party when he ought in justice and good conscience to speak up is as dangerously misleading and as disastrous to an innocent party as downright false and fraudulent representation.   (*Eastwood v. Standard Mines and Milling Co.,* 11 Ida. 195, 81 Pac. 382.)   As said by Herman on Estoppel (sec. 735), "He who does not forbid what he can forbid seems to assent."

In *Marshal v. Foltz,* 221 Pa. 570, 70 Atl. 857, the court said: "When silence is so suggestive, that coupled with the fact of knowledge within the mind of him who in honesty and fair dealing ought to speak out, it becomes a fraud on the part of him who should speak, then it is sufficient to estop."

In 16 Cyc. 759, the author of the text says:

"To make the silence of a party operate as an estoppel the circumstances must have been such as to render it his duty to speak.   It is essential that he should have had knowledge of the facts, and that the adverse party should have been igno-

rant of the truth, and have been misled into doing that which he would not have done but for such silence. In other words, when the silence is of such a character and under such circumstances that it would become a fraud upon the other party to permit the party who has kept silent to deny what his silence has induced the other to believe and act upon it will operate as an estoppel." (See same text, sec. 791.)

The authorities are quite uniform in announcing this rule although they put it in various forms.

We feel that under the record as presented to this court it is our duty to reverse the judgment in this case. Judgment reversed and a new trial ordered. Costs awarded in favor of appellant.

Stewart, C. J., and Sullivan, J., concur.