492 P.2d 48

John C. HAGGERTY and Margaret Haggerty, husband and wife, Plaintiffs-Respondents,

v.

WESTERN BARGE, INC., an Idaho Corporation, Defendant-Appellant.

No. 10668.

Supreme Court of Idaho.

Dec. 22, 1971.

Rehearing Denied Jan. 12, 1972.

Peter B. Wilson, of Wilson & Walter, Bonners Ferry, for defendant-appellant.

Thomas A. Mitchell, Coeur d'Alene, for plaintiffs-respondents.

McFADDEN, Justice.

This appeal is from a judgment in favor of plaintiffs John C. Haggerty and wife, Margaret, and from a related order denying the motion of defendant Western Barge, Inc., for a new trial and amendment of certain findings of fact. The district court judgment awarded plaintiffs the sum of $18,085.33, with interest. That sum included three months' rent on trucks at $3,000 per month with accumulated interest; two months' wages for the plaintiffs together with accumulated interest; $2,185.—

36 with accumulated interest for sums advanced by plaintiffs on behalf of defendant; and $2,025.02 (with accumulated interest) representing interest due on the balance of the option price under an agreement for the sale of plaintiffs' trucking firm. In the judgment the court also cancelled a promissory note and second chattel mortgage on two trucks.

This action was tried to the court sitting without a jury on the issues framed by plaintiffs' complaint, the defendant's answer and cross-complaint, and the plaintiffs' answer to the cross-complaint. Following trial the court entered a comprehensive memorandum decision and thereafter findings of fact, conclusions of law and judgment in favor of the plaintiffs.

A complicated factual picture was presented to the district court in this case. Little is to be gained by an extended recital of all the facts, and this opinion will relate only those facts which give the background necessary to understand the import of the district court's judgment.

Prior to May 12, 1967, John Haggerty had been granted an Interstate Commerce Commission permit to operate a trucking business as a common carrier of goods between the midwest and Alaska. He was doing business as an individual under the name of Fairbanks Midwest Truck Lines, and owned (subject to a chattel mortgage with an Alaskan bank) two truck-tractors. On May 12, 1967, he executed a written instrument wherein he agreed to sell his trucking business, which included the I.C.C. permit and the two trucks, to Western Barge, Inc. This agreement was in the form of an option, with the total sale price being $50,000. In general the agreement provided: (1) for the first ninety days Western Barge was given the right to lease the two truck-tractors at $3,000 per month, with the provision that two-thirds of the rental payments were applicable to the purchase price if the purchase option were exercised; (2) an option to purchase Fairbanks Midwest by Western Barge under a lease-purchase plan, the pertinent language reading:

"3. Owner-Lessor agrees to sell to Buyer-Lessee said Fairbanks Midwest Truck Lines business * * * in the following manner:

(a) Buyer-Lessee may, by payment of $9,000.00, $1,000.00 of which is hereby acknowledged received, and an additional $8,000.00, said latter sum by these presents escrowed with National Bank of Alaska, lease the operating rights and equipment of said company for a period of ninety (90) days from date of I.C.C. approval, and thereafter by the payment of $3,000.00 per each monthly period, payable in advance of such monthly commencement date, continue to lease said equipment and operating rights, it being understood and agreed that two-thirds (⅔) of all lease payments including the initial payments shall be applied to the purchase price of said $50,000.00, said unpaid balance of purchase price to accrue interest at the rate of six percent (6%) per annum.

(b) Buyer-Lessee may at any time pay off the unpaid balance.

(c) Buyer-Lessee has by these presents elected to lease only said equipment and operating rights for a period of ninety (90) days without obligation to purchase, but with the option to purchase upon the above terms[;]"

and, (3) a recital that Haggerty desired to sell "his going business" through a corporation to be organized, and that the parties would use their best efforts to effectuate the sale and obtain I.C.C. approval.

At the time of the agreement, Fairbanks Midwest Truck Lines was not an operating company. The tractors were parked on a lot in Alaska while Haggerty worked for another trucking firm. After it was learned that the I.C.C. denied approval of the transfer of the permit by Haggerty to the company he and his wife had incorporated, Western Barge took possession of the tractors on August 1, 1967, as agreed, and leased them to the firm that employed Haggerty. Ultimately Haggerty received

the $9,000.00 for the rentals for this ninety-day period. (Haggerty received $1,000.00 on execution of the agreement, and later the bank escrow holder by direction of officers of Western Barge first released $2,000.00 to Haggerty and in October, 1967, the other $6,000.00.)

In the latter part of October, 1967, the plaintiffs and certain officers and directors of Western Barge met in Coeur d'Alene and discussed the future of the May 12 agreement and what further was to be done. Although there is a great deal of conflicting testimony as to just what did take place at this meeting, the district court in its memorandum opinion determined that the parties agreed Fairbanks Midwest should be made into a viable, operating company, and to that end agreed that the Haggertys would begin to operate under their permit and that they would leave their present employment and become employees of Western Barge on November 1, at a monthly salary of $1,250.00 for Mr. Haggerty and $500.00 for Mrs. Haggerty. It was agreed Mr. Haggerty would set up operations in Omaha, Nebraska, and that Alfred Ghezzi, an officer of Western Barge, would organize operations in Anchorage, Alaska. At the Coeur d'Alene meeting there was a discussion as to how the operation was to be financed, which apparently was not fully resolved.

In November, 1967, word was received that the I.C.C., after reconsideration, had approved the transfer of Haggerty's permit to his corporation, such approval becoming effective in January, 1968. After November 1, the trucks were parked in Seattle, Washington, and about November 22, the trucks were moved to Omaha by an employee of Western Barge. During this period of time the Haggertys were advancing their own money to get the operations under way. In November, Western Barge advanced $10,000.00 but required that this advance be evidenced by a promissory note secured by a second mortgage on the two trucks. The note and mortgage, dated November 27, 1967, were executed by Fairbanks Midwest Truck Lines, Inc., with

John C. Haggerty's name (as president) signed by Margaret Haggerty, "attorney in fact," and by Margaret Haggerty as secretary.

The second mortgage on the trucks was of little security value as the trucks at that time were worth little more than the balance due on the first mortgage held by the bank. However, inasmuch as Western Barge had not taken any steps to complete the formalities of acquiring the Fairbanks Midwest corporate structure, it wished to justify this advance of funds on its corporate books, presumably to satisfy its position before the I.C.C. in its application for other permits. It was for this reason, according to the Haggertys, that they executed the note and mortgage. Indeed, one of the officers of Western Barge stated that the note was merely for bookkeeping purposes, and on the basis of these facts the district court found that the $10,000.00 advanced by Western Barge was not a loan to the Haggertys or their corporation, but was rather an investment in the business which Western Barge considered it owned as of November 1.

The Haggertys continued operating the trucking business, but in December the funds were running low. In the early part of December, Mr. Haggerty and Richard Johnson, one of the officers of Western Barge, met in Alaska; Haggerty was advised that Western Barge wanted to get out of the operation, but that Johnson wished to discuss this with other officers in Coeur d'Alene, and that Johnson would later phone Haggerty. Johnson did phone and as a result of that phone conversation Haggerty, on December 12, 1967, wired the attorney for Western Barge, terminating the agreement of May 12, 1967, Haggerty agreeing to execute a promissory note to repay $10,000.00. Western Barge, on the same day, wired its response rejecting Haggerty's termination.

On January 25, 1968, Western Barge was contacted by Haggerty's attorney demanding termination of the May 12, 1967, agreement, a release of the chattel mortgage and promissory note, plus a demand

for wages. Subsequently, the Haggertys transferred their I.C.C. permit for $40,-000.00 to another company, and the bank foreclosed the mortgage on the two trucks.

The district court found from the evidence before it that the lease and option agreement between the Haggertys and Western Barge was terminated as of January 25, 1968.

In its memorandum opinion the district court reasoned that the agreement was between the Haggertys as individuals and Western Barge; that Western Barge leased the trucks as of August 1, 1967, until January 25, 1968, and was obligated to pay $3,000.00 per month rentals on them; that as of November 1, 1967, Western Barge had employed Haggerty and his wife at $1,250.-00 and $500.00 per month respectively, and that this employment continued until January 1, 1968; that the operation of the trucks during this period was for the benefit of Western Barge, but that by January 1, 1968, because of the refusal of Western Barge to either cancel the agreement or to advance more funds to keep the Omaha-Anchorage truck operation going, as agreed at the October, 1967 Coeur d'Alene meeting, the Haggertys were justified in termination of the May 12, 1967, agreement.

By appeal, Western Barge challenges a number of the findings of fact made by the court, and also assigns error to the court's failure to find certain other facts. In regard to these assignments of error, an examination of the record reflects substantial, competent evidence to support each of the findings by the district court, and an evaluation of the evidence, which, while conflicting in certain areas, fully justifies the conclusions reached by the trial court. Jackson v. Blue Flame Gas Co., 90 Idaho 393, 412 P.2d 418 (1966).

■ Appellant's seventh assignment of error takes exception to the finding that Western Barge had exercised its option under the May 12, 1967, agreement. This particular agreement is not precise on all the details of how the option to purchase was to be communicated to the seller. (See the terms quoted, *supra.*) This lack in the agreement, which was drafted by the then attorney for Western Barge, need not be viewed as fatal to the agreement, if the option was, by actions of Western Barge, actually exercised. American Law Institute, Restatement, Contracts, § 21; DeBritz v. Sylvia, 21 Wash.2d 317, 150 P.2d 978 (1944). Western Barge's investing the additional $10,000.00 plus hiring the Haggertys and assigning its own man to oversee the trucking operations on the Omaha-Anchorage run were actions done for the benefit of Western Barge. These actions indicate an exercise of the option. Although shares of stock in Fairbanks Midwest Truck Lines, Inc., were not exchanged and other formalities observed, that item was never a prerequisite to the exercise of the option. Basically Western Barge was seeking acquisition of an operating company and despite the circumstances of an administrative delay, attempted to achieve that result. We conclude there was competent and substantial evidence to sustain the district court in its findings of fact and conclusions of law in this regard.

Appellant contends, regarding the district court's finding that the option was exercised, that there could have been no meaningful exercise of the purchase option. Appellant reasons that Haggerty had to get I.C.C. approval for the transfer of the permit to his corporation, and while this application was pending he could not personally transfer it to Western Barge, and that Fairbanks Midwest Truck Lines, Inc., had nothing to transfer. This argument, however, presupposes the invalidity of the district court's determination that Western Barge operated the truck line after the October, 1967, meeting. The May 12, 1967, agreement contemplated a delay in obtaining the transfer.[1] Because Western Barge

1. On this point the agreement reads:
   "5. It is further agreed that Owner- Seller have indicated their preference to sell this going business through their cor-

took over the trucking operation, it certainly was not in a position to demand strict compliance, especially when information was later received that the transfer was approved, effective in January, 1968.

 Appellant assigns error to the method employed by the district court in its computation of the damages. However, in this regard, appellant has failed to present to this Court any specific items where the district court erred. Damages for the use of the trucks were based on the monthly rentals specified in the May 12 agreement, which, under the decision of the court, were found due and owing by Western Barge. The matter of wages for Haggerty and his wife was based on a contract of employment which the court found. The item as to advances by the Haggertys was based on information submitted to the court, upon agreement of the parties, following recapitulation of books by Mrs. Haggerty and an accountant familiar with the account books maintained by Mrs. Haggerty on the Omaha-Anchorage operation. Finally, the court charged interest on the purchase price, giving full credit for all sums received by the Haggertys from the foreclosure sale of the trucks and the sale of other assets. Nowhere has it been claimed that there was any error in this regard under the theory as outlined by the district court.

Appellant assigned error to the court's refusal to allow the addition of Fairbanks Midwest Truck Lines, Inc., as a defendant in the cross-complaint. Although assigned as error this Court has not been favored with either citation of authority or argument in support of such assignment, and thus it will not be considered. Supreme Court Rule 41(2); Vaughn v. Vaughn, 91 Idaho 544, 428 P.2d 50 (1967).

After consideration of the record and all of appellant's assignments of error, we conclude there was no error.

Judgment affirmed, costs to respondent.

McQUADE, C. J., and DONALDSON and SHEPARD, JJ., concur.

SPEAR, J., retired prior to decision.

poration which they have directed their attorney to organize and that they with the Buyer-Lessees agree that through their respective attorneys to use their best efforts to prepare the necessary documents and incorporation papers and applications to I.C.C. to effectuate the operation by Buyer-Lessee as reasonably soon as possible."