498 P.2d 1255

Don CHURCH, Plaintiff-Appellant,

v.

Lawrence ROEMER and Audene Roemer,
husband and wife, Defendants,

and

Simplot Industries, Inc., a corporation,
Defendant-Respondent.

No. 10904.

Supreme Court of Idaho.

June 20, 1972.

Rehearing Denied July 20, 1972.

William J. Langley and Webb, Pike, Burton & Carlson, Twin Falls, for appellant.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent.

DONALDSON, Justice.

This action was brought to recover payment of a debt and to foreclose a farm laborer's lien. The plaintiff-appellant Don Church was hired by Lawrence Roemer to harvest potatoes grown on land leased by Roemer, part of which land was owned by the defendant-respondent Simplot Industries. Although the J. R. Simplot Company—as contrasted to the separate corporation of Simplot Industries—is not a party to this lawsuit, it is involved in the facts of the case. Roemer had contracted to sell all of his potatoes to the J. R. Simplot Company. Church completed his harvesting work in November of 1967 and delivered the harvested potatoes to the J. R. Simplot Company. The J. R. Simplot Company paid for these potatoes by writing out checks to the order of Roemer, Simplot Industries, and a third party not involved in this action (Farmers Financial Service Co., which had a security interest for fertilizer supplied by Simplot Industries). These checks were deposited in a checking account maintained at the First Security Bank, on which account checks could be drawn only with the signatures of *both* Roemer and an agent (Mr. Balderama) of Simplot Industries. Simplot Industries had helped Roemer obtain a "line of credit" from the First Security Bank, and in order to protect itself, Simplot Industries required that Balderama cosign all of Roemer's checks for farming expenses.

In late November, 1967, Roemer was prepared to pay Church in full for the services he rendered in harvesting potatoes on the land leased to Roemer. But Church, for tax reasons, requested that payment be deferred until January of 1968. Roemer replied that Church would have to check with Balderama, whereupon Church met with Balderama and Roemer and renewed his request. Balderama did not testify at the trial. Roemer testified that Balderama said such a deferral "would be all right" and that "Balderama agreed that the payment be deferred until after the first of the year." The plaintiff-appellant

Church testified that Balderama "agreed that the money was there at that time and would be after the first of the year." This testimony was supplemented by that of a third party present at the time (Mr. Dougherty, who is not a party to this suit), who testified that Balderama said that "the money was there and it was all right to wait until after the first of January to get the money." Relying upon this testimony, the appellant contends that Balderama's statements had the effect of binding Simplot Industries to pay the appellant for the work he had done at Roemer's request.

At the time of the November meeting of Roemer, Balderama, and Church, the bank account from which farm expenses were paid contained some $29,000. On December 30, however, the First Security Bank appropriated almost $20,000 of the funds in this account in order to satisfy the debt owed to it by Roemer (which had arisen when the bank loaned money to Roemer, pursuant to the request of the respondent Simplot Industries); this left a balance in the account of only $8,732. Thereafter, a check was drawn for $8,650 in favor of the J. R. Simplot Company in payment for seed and fertilizer previously furnished to Roemer; presumably, this check, like all the others drawn on this account, was signed not only by Roemer but also by Balderama, the agent of Simplot Industries. This left a balance of only some $80 in the account.

After January 1, 1968, the appellant requested payment, which was refused, and in February of 1968, he filed a farm laborer's lien for the amount of his claim for harvesting services; as required by I.C. § 45–302,[1] this lien was filed within ninety days of the completion of the work for which the claim was made. At the same time, the appellant commenced this suit against Roemer and Simplot Industries.[2] It was stipulated at the pre-trial conference that the appellant had provided Roemer with services worth $19,943.53. In June, 1970, the case was tried before the district court sitting without a jury.

The trial court granted summary judgment in favor of the defendant Roemer because the appellant's claim for harvesting services was among the debts discharged when Roemer was granted a discharge in bankruptcy in January, 1969. The propriety of this summary judgment is not questioned by the appellant. In July, 1970, after the conclusion of the trial in the district court, the appellant submitted a motion to add the J. R. Simplot Company as a party defendant; this motion was denied on the

1. I.C. § 45–302 provides:
 "*Claim of lien—Enforcement—Removal and sale of products in open market.*— Any person claiming the benefit of this chapter must, within ninety days after the close of said work or labor, file for record with the county recorder of the county in which said work and labor was performed, a claim which shall be in substance in accordance with the provisions of section 45–407, so far as the same may be applicable, which said claims shall be verified as in the said section provided, and said liens may be enforced in civil actions: provided, that where farm products are removed from the premises upon which the same were grown, and sold to shippers, wholesale dealers or manufacturers upon the open market in the ordinary course of trade before the filing of any such lien, such shippers, wholesale dealers or manufacturers shall not be liable for any farm laborer's liens, unless notice has been given them of per- sons holding claims described in this chapter; and said vendee shall be required to demand and receive a sworn, written statement from the vendor giving the names and the amounts due to laborers entitled to liens, as provided in this chapter. Any such vendor who shall fail to make such statement when demanded or who shall make any false or misleading statement therein, shall be guilty of a misdemeanor, and shall, moreover, be liable to any laborer thus deprived of his lien for double the full value thereof, and to reasonable attorney's fees in case suit is instituted to recover the amount due."

2. I.C. § 45–303 provides:
 "*Duration of lien.*—No lien provided for in this chapter binds such crop or crops for a longer period than six calendar months after the claim as herein provided has been filed, unless a civil action be commenced in a proper court within that time to enforce the same."

basis that the evidence produced at trial established that the appellant's lien did not attach to the harvested potatoes received by the J. R. Simplot Company. Judgment was entered in favor of the respondent Simplot Industries, and this appeal followed.

Relying upon the testimony as to what took place when he met with Balderama in November of 1967, the appellant Church contends that the trial court erred in finding that Balderama did not enter into any agreement on the part of Simplot Industries to pay the obligation of Roemer due the appellant. Findings of fact shall not be set aside on appeal unless they are clearly erroneous; in applying this principle, regard must be given to the special opportunity of the trial court to judge the credibility of those witnesses who appear personally before it. I.R.C.P. 52(a). Because there is substantial evidence to support the challenged finding, it will not be disturbed by this Court. I.C. § 13–219; Weaver v. Pacific Finance Loans, 94 Idaho 345, 487 P.2d 939 (1971); Duncan v. Davis, 94 Idaho 205, 485 P.2d 603 (1971); Dalby v. Kennedy, 94 Idaho 72, 481 P.2d 30 (1971). Since the trial court in effect found that the respondent's agent did not *promise* to pay (with Simplot funds) the debt due appellant, it is unnecessary to decide whether the doctrine of promissory estoppel [3] rendered the alleged promise enforceable; similarly, it is unnecessary to decide whether the alleged promise falls within an exception to the statute of frauds.

The appellant contends that Simplot Industries was engaged in a joint venture with Roemer and for that reason may be held liable for his debts. The respondent submits, however, that the issue of joint venture was never raised, argued, or decided at trial and, therefore, should not be considered on appeal. In his reply brief, the appellant suggests that the issue was raised sufficiently at trial and that the court's findings indicate that it considered the issue of joint venture; contending that the court specifically found that such a relationship did not exist, the appellant points to the following conclusion of the court:

"The agreements between Lawrence Roemer and defendant Simplot Industries, Inc., * * * did not create a relationship by which the defendant Simplot Industries, Inc., became liable for indebtedness incurred by Lawrence Roemer * * *."

After reviewing the record, we are inclined to agree with the respondent's posi-

---

3. It appears that the appellant might have relied upon the doctrine of equitable estoppel to establish a cause of action. *See* Bjornstad v. Perry, 92 Idaho 402, 443 P.2d 999 (1968); Minidoka County for Use and Benefit of Detweiler Bros. v. Krieger, 88 Idaho 395, 399 P.2d 962 (1964); Fairchild v. Wiggins, 85 Idaho 402, 380 P.2d 6 (1963); Little v. Bergdahl Oil Co., 60 Idaho 662, 95 P.2d 833 (1939); Farber v. Page & Mott Lumber Co., 20 Idaho 354, 118 P. 664 (1911); 3 Pomeroy's Equity Jurisprudence § 805, at 191 (5th ed. 1941). This theory was not, however, presented during the trial or even raised on appeal; hence, it is not properly before us for consideration. Brown v. Arrington Const. Co., 74 Idaho 338, 262 P.2d 789 (1953). Whether the doctrine of equitable estoppel should be invoked is ordinarily a question of fact which must be resolved at trial and which, in any event, cannot be considered originally in the appellate court; thus, it has been held that where the trial court did not make any finding with reference to the question of estoppel, the appellate court cannot determine whether a party is estopped by his conduct. Palmer v. Town of Farmington, 25 N.M. 145, 179 P. 227 (1919); Di Nola v. Allison, 143 Cal. 106, 76 P. 976 (1904); 28 Am. Jur.2d Estoppel and Waiver § 153 (1966). In this regard, it is significant that although the appellant filed objections to the trial court's findings and conclusions, together with a motion to amend and make additional findings and conclusions, the appellant did not object to the court's failure to make any finding with reference to estoppel, nor did the appellant request such a finding. *Cf.* Williams v. Idaho Potato Starch Co., 73 Idaho 13, 22–23, 245 P.2d 1045 (1952).

tion that the issue of joint venture was not tried in this case. In this regard, it is significant that although the appellant filed objections to the trial court's findings and conclusions, together with a motion to amend and make additional findings and conclusions, the appellant did not object to the court's failure to make any finding with respect to joint venture, nor did the appellant request a conclusion of law to the effect that a joint-venture relationship between Roemer and Simplot Industries gave rise to the latter's liability for the debts incurred by the former. In any event, even if we accept the appellant's contention that the joint-venture issue was raised and determined in the respondent's favor, the appellant still cannot prevail, because there is sufficient evidence in the record to support a finding in favor of the respondent on that issue. Whether a relationship of joint venturers exists is primarily a question of fact for the trial court to determine from the evidence and the inferences to be drawn therefrom. Lepel v. Lepel, 93 Idaho 82, 456 P.2d 249 (1969); Stearns v. Williams, 72 Idaho 276, 240 P.2d 833 (1952). Since the trial court's finding that such a relationship did not exist is not clearly erroneous, it must not be set aside on appeal. I.R.C.P. 52(a).

■■■■ Relying on the lien filed under I.C. § 45–302,[4] the appellant contends that the respondent Simplot Industries is liable for conversion because it controlled the disposition of the potatotes harvested by the appellant and because it appropriated the proceeds of the sale of the crop. However, the uncontroverted evidence indicates that at no time after the appellant had completed his harvesting work did Simplot Industries ever have the harvested potatoes in its possession; in fact, as part of his labor, the appellant himself delivered the crop directly to the J. R. Simplot Com-

pany or to storage facilities leased by that company. The respondent did nothing to injure the appellant's security interest in the harvested crop and, under such circumstances, may not be held liable for conversion. Hansbrough v. D. W. Standrod & Co., 49 Idaho 216, 286 P. 923 (1930); cf. Adair v. Freeman, 92 Idaho 773, 451 P.2d 519 (1969). In regard to the alleged conversion of the *proceeds* of the crop sale, a reading of I.C. § 45–302 discloses that it was not the intention of the legislature to give a farm laborer a security interest in the proceeds derived from a sale of the crop. That section states, *inter alia*, that a laborer is "deprived of his lien" if the vendor fails to make a statement, upon the vendee's demand, informing the latter of the existence of farm laborers who are entitled to liens upon the crop sold. This provision indicates that after the crop is sold, the lien attaches, if at all, only to the crop in the hands of the vendee and not to the proceeds of the sale. Since the appellant had no property interest in the proceeds, it follows that he does not have an action for conversion based upon any alleged acts of dominion exerted over those proceeds by the respondent. *See* Adair v. Freeman, *supra*. The appellant repeatedly mentions that the respondent in its answer admitted that it then had in its possession the potatoes harvested by the appellant. In the court's pre-trial order, however, the following amendment to the respondent's answer was granted: "none of the potatoes harvested were in storage or in possession of this defendant, nor the proceeds thereof, at the time of the filing of the lien or the service of the complaint." No objections to this pre-trial order were filed and, by its own terms, within ten days the contents thereof became "applicable and binding in all further proceedings in this matter."[5] Moreover, as indicated above,

---

4. I.C. § 45–302 is set out in note 1, *supra*.

5. The appellant did not contend at trial, nor does he contend here, that the respondent should be estopped to deny its possession of the crop because the appellant's

reliance upon this admission in the answer resulted in the appellant's being precluded from joining the actual possessor, the J. R. Simplot Company, as a party defendant.

the evidence subsequently adduced at trial fully substantiates the position of the respondent that the harvested crop was delivered directly to the J. R. Simplot Company.

 For the purpose of considering the appellant's contention that the trial court erred in denying his motion to add the J. R. Simplot Company as a party defendant, we may assume that if an action had been properly commenced against that company, the appellant's lien could have been enforced against any potatoes subject to the lien in the company's possession. However, Idaho Code section 45–303 states that:

> "No lien provided for in this chapter binds such crop or crops for a longer period than six calendar months after the claim as herein provided has been filed, unless a civil action be commenced in a proper court within that time to enforce the same."

Under a statute such as this, the lien becomes void for all purposes as to any person not made a party to an enforcement suit within the prescribed time. Willes v. Palmer, 78 Idaho 104, 298 P.2d 972 (1956); Western Loan & Building Co. v. Gem State Lumber Co., 32 Idaho 497, 185 P. 554 (1919); Interior Warehouse Co. v. Hays, 91 Wash. 507, 158 P. 99 (1916); 3 C.J.S. Agriculture § 51, at 459 (1936); cf. Annot., 139 A.L.R. 903, 913 (1942). In other words, section 45–303 must be read as though it provided that the lien is ineffective unless a civil action is commenced within six months *against the defendant against whose interest the lien is asserted.* Western Loan & Building Co. v. Gem State Lumber Co., *supra.* The time limitation within which a foreclosure action must be brought conditions the right to sue. *Id.* Where, as here, this condition is unfulfilled as to a particular defendant, recovery against the interest of that defendant is not possible. In this case, the appellant's lien [6] was filed in February, 1968,

and no action was commenced against the J. R. Simplot Company within six months of that filing; hence, the appellant's July, 1970, motion to add that company as a party defendant was properly denied. The trial court denied the appellant's motion on the ground that since there was no evidence to show that the notice required by section 45–302 [7] was given to the J. R. Simplot Company, the lien was lost when the potatoes were delivered to that company; and, therefore, the lien could no longer be enforced against that crop. However, section 45–302 also requires that the vendee demand such notice, and there was no evidence to indicate that the J. R. Simplot Company complied with this requirement. This statute indicates that a farm laborer's lien may be enforced against farm products sold to a vendee, even though he did not receive notice of the lien, if he did not demand sworn, written notice as required by the terms of the statute. Therefore, it was error to conclude that liability was precluded merely because the evidence failed to show that the J. R. Simplot Company did not receive the statutory notice, where the evidence also failed to show that such was demanded by that company. Although we disagree with the reason given by the trial court for its ruling, the appellant's motion to add the J. R. Simplot Company as a party defendant was, as explained above, properly denied. Where an order of a lower tribunal is correct, but was based upon an erroneous theory, the order will be affirmed by the appellate court upon the correct theory. Johnson v. Gorton, 94 Idaho 595, 495 P.2d 1 (1972); Nysingh v. Warren, 94 Idaho 384, 488 P.2d 355 (1971); Industrial Indem. Co. v. Columbia Basin Steel & Iron Inc., 93 Idaho 719, 471 P.2d 574 (1970).

 Numerous additional errors are assigned challenging certain findings and conclusions made by the court and its refusal to accept others proposed by the ap-

---

6. Although the appellant's claim of lien did not mention the J. R. Simplot Company, it did substantially comply with the provisions of I.C. § 45–407, as required by I.C. § 45–302 (set out in note 1, *supra*).

7. I.C. § 45–302 is set out in note 1, *supra.*

**788**

pellant. The appellant also assigns as error the court's denial of his motion to reopen the trial for the purpose of permitting the introduction into evidence of two potato growing agreements entered into by the J. R. Simplot Company and the defendants. These assignments are not, however, supported by authority or argument and for that reason will not be considered on appeal. Supreme Court Rule 41; Haggerty v. Western Barge, Inc., 94 Idaho 509, 492 P.2d 48 (1971); State v. Linn, 93 Idaho 430, 462 P.2d 729 (1969); Gem-Valley Ranches, Inc. v. Small, 90 Idaho 354, 411 P.2d 943 (1966).

Judgment affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, SHEPARD, and BAKES, JJ., concur.