702 P.2d 875

**Bobby Joe SAGE, Albert Sage, and Jimmy Sage, Plaintiffs-Respondents,**

v.

**RICHTRON, INC., a Utah corporation, and Shoshone Farms, Ltd., a Utah limited partnership, Defendants-Appellants.**

**No. 14539.**

Court of Appeals of Idaho.

June 25, 1985.

Thomas H. Church of Church, Church, Snow & Tuft, Burley, for defendants-appellants.

John J. Healzer of Hart and Healzer, Jerome, for plaintiffs-respondents.

SWANSTROM, Judge.

Plaintiffs brought this action to collect wages earned and expenses incurred by them in the production of wheat and barley crops for Shoshone Farms in 1979. Bobby and Albert Sage also sought to foreclose farm labor liens they had filed to secure their claims. The Sages were employed as farm laborers by Shoshone Farms, Ltd., a Utah limited partnership with Richtron, Inc., as its general partner. The district court, following a jury verdict, awarded judgment to each of the Sages against Richtron and Shoshone Farms, Ltd., for treble the amount of wages found due and owing. I.C. § 45–615(4). This appeal followed. We affirm.

The issues which we discuss concern: (1) whether the claims of farm laborers' liens complied with statutory requirements; (2) whether such liens can apply to the proceeds of crops which are sold even before harvest; (3) whether laborers are entitled to both a lien under I.C. § 45–301 and to treble wages (damages) under I.C. § 45–615(4).

The relevant facts are as follows. During 1979, Bobby Sage was employed as a farm manager of Shoshone Farms. Albert and Jimmy Sage were employed as farm laborers. In order to receive their wages, the Sages were required to send time and expense reports to Richtron on the first and fifteenth of each month. The record

indicates that in approximately May, 1979, Richtron experienced cash flow problems which resulted in its inability to completely pay the Sages. In spite of not being completely compensated, the Sages continued to work on Shoshone Farms. In June, 1979, Reed Grain Company contracted with Richtron to purchase the 1979 crops of Shoshone Farms when they were harvested. The Sages completed their harvesting work in October, 1979, and delivered the crops to Reed Grain Company. At the time of delivery, Reed Grain Company did not pay the purchase price of the grain.

The Sages quit working for Shoshone Farms by the end of October. Albert and Bobby Sage subsequently filed separate labor liens on the crops from Shoshone Farms in November, 1979. The Reed Grain Company, aware of the Sages' labor liens and various other liens on the crops, deposited the purchase price of the grain with the clerk of the district court pursuant to I.C. § 8–701. Subsequently, on Richtron's motion, the proceeds from the crops were released by the court when an undertaking was substituted, as provided by I.C. § 45–310.

First, Richtron asserts that the Sages' labor liens do not comply with the statute, I.C. § 45–301, as the two claims of lien fail to correctly describe the property where the crops were grown and fail to set forth the specific labor employed to harvest the crops. Bobby and Albert's claims of lien contain identical property descriptions using sectional subdivisions. The legal description is not of the entire property known as the Shoshone Farms. Rather, only eighty acres are described which in May, 1979, were leased by Richtron to a third party. It must be determined whether this incomplete property description makes the liens ineffective.

■ Generally, farm labor liens are purely statutory, and anyone claiming such a lien must substantially comply with the statute. *Nohrnberg v. Boley*, 42 Idaho 48, 246 P. 12 (1925). However, the lien statute, I.C. § 45–301, is to be liberally construed in favor of the farm laborer and this liberal construction includes the determination of whether the notice and claim of lien sufficiently describes the property upon which the lien is sought and its location. *Kerby v. Robinson*, 58 Idaho 781, 80 P.2d 33 (1938). The lien granted by the statute is against the crop, not against the land, therefore, it is the crop which should be described so that it may be located with reasonable certainty. *Linch v. Perrine*, 51 Idaho 152, 4 P.2d 353 (1931). The statute does not require a legal description of the property from which the crop was grown.

■ In this case, the recorded notices of the claim of lien do not describe all the property included in Shoshone Farms. However, the notices do identify the crops of wheat and barley which had been harvested by type of grain and weight, the reputed owner of the crops, the county in which the crops were harvested, the fact that the crops were harvested from the Shoshone Farms and the present location of the crops at Reed Grain Company, giving the address of the company's main office. We hold that the statements in the notices, coupled with the natural inquiries suggested by those statements, provide enough information to enable a reasonable person to find the location of the crops. *Kerby v. Robinson, supra.* The crops were described sufficiently for identification with reasonable certainty. We uphold the district court's conclusion that the mere fact the notices described a portion of Shoshone Farms, other than that from which the crops were harvested, does not render the liens defective.

■ Richtron next contends that the liens are defective because the notices do not set forth the specific type of farm work performed in harvesting the crops. Both Albert's and Bobby's notices assert a claim upon the crops "for labor performed, assistance rendered and expenses incurred in the operation of Shoshone Farm." We hold that this language met the essential requirements of the statutes. I.C. §§ 45–302, 45–407.

Richtron also argues that the proceeds of the sale of the wheat and barley crops are

not subject to the liens. It is further asserted that because an undertaking was substituted for the actual proceeds, the undertaking also is not liable for any judgment granted to the Sages. The record indicates that the wheat and barley crops grown on Shoshone Farms were delivered to Reed Grain Company before the Sages filed their claims of liens. However, Reed Grain Company still had possession of the crops and had not paid the purchase price when it received notice of the claimed liens.

Idaho Code § 45–302 provides:

that where farm products are removed from the premises upon which the same were grown, and sold to shippers, wholesale dealers or manufacturers upon the open market in the ordinary course of trade before the filing of any such lien, such shippers, wholesale dealers or manufacturers shall not be liable for any farm laborer's liens, unless notice has been given them of persons holding claims described in this chapter; and said vendee shall be required to demand and receive a sworn, written statement from the vendor giving the names and the amounts due to laborers entitled to liens, as provided in this chapter.

Appellants cite *Church v. Roemer*, 94 Idaho 782, 786, 498 P.2d 1255, 1259 (1972) as standing for the proposition that "after the crop is sold, the lien attaches, if at all, only to the crop in the hands of the vendee and not to the proceeds of the sale." The case is inapposite. Church, the lien claimant, had sued the grower of the crop for whom he worked and Simplot Industries, Inc. The grower went bankrupt and Church sought to foreclose a farm laborer's lien against Simplot Industries, Inc. However, Simplot Industries, Inc. was not the purchaser of the crop and never had the harvested crop in its possession. Rather, the purchaser of the crop had paid over the proceeds to the grower and to Simplot Industries, Inc. jointly because Simplot Industries, Inc. had provided financial backing to the grower. The distinctions between *Church* and the present case are several and we need not detail them here. Given those distinctions, however, we believe that the above quoted language from *Church* should not be applied in the present case. To do so would be to hold that the lien attaches to the crop in the hands of the vendee but if the vendee then pays for that crop, knowing of the existence of a claim of lien, the lien cannot attach to the proceeds. We are not convinced that either the Legislature or our Supreme Court intended this result.

 Given the circumstances presented here, we hold that the proceeds from the sale of the crops to Reed Grain Company were subject to the lien. It follows that the bond or undertaking substituted for the proceeds stands for payment of "any judgment, including costs and attorney's fees, rendered in favor of said lien claimant." I.C. § 45–310.

 At trial the jury returned a special verdict form fixing the amount of "past due wages" owing to each of the three plaintiffs. The district court, in its judgment, trebled the amount in each instance, applying the following provisions of I.C. § 45–615(4):

Any judgment for the plaintiff in a proceeding pursuant to this act shall include all costs reasonably incurred in connection with the proceedings and the plaintiff ... shall be entitled to recover from the defendant, as damages, three (3) times the amount of unpaid wages found due and owing.

Appellants assert first that the judge erred in applying this statute because there was no finding by the jury that appellants had "wrongfully" withheld wages. However, we have recently held that a showing of wrongfulness is not required. *Smith v. Idaho Peterbilt, Inc.*, 106 Idaho 846, 683 P.2d 882 (Ct.App.1984). Neither is it necessary to show bad faith on the part of the employer. *See Gilbert v. Moore*, 108 Idaho 165, 697 P.2d 1179 (1985).

Appellants next argue that Bobby Joe Sage and Albert Sage are not entitled to both treble damages and to a laborer's lien. The contention is that the remedies provided under I.C. § 45–615(4) and I.C. 45–301 are mutually exclusive. They assert that a wage earner must elect between these remedies. Appellants candidly admit there is

no direct authority to support their position, but, by analogy, they argue that the holding in *Lawless v. Davis,* 98 Idaho 175, 560 P.2d 497 (1977) is supportive. *Lawless* dealt with the interplay between I.C. §§ 45–615(4) and 45–606. Section 45–606 allows an employee who has been discharged from employment without being paid to continue to draw his wages for up to thirty days. In *Lawless* the Court held that a discharged employee could not claim the additional "unearned" wages under § 45–606 and also have his total wages (earned and unearned) trebled under I.C. § 45–615(4). The Court held that when the legislature added the latter statute it intended to provide "an aggrieved employee with alternative remedies to meet the circumstances of his particular case." 98 Idaho at 177, 560 P.2d at 499. The Court noted if it were to give the statute a contrary interpretation the result would be oppressive and unreasonable.

In the case before us, the above rationale does not apply. The farm labor lien statute provides a lien on the crop as security for the payment of any judgment awarded. The wage claim statute, on the other hand, provides for the measure of damages to be awarded. Neither the language nor the titles of the separate acts suggests that the remedies under the acts are mutually exclusive. The two statutes are intended to fulfill different purposes. We are not persuaded that a laborer who seeks the benefit of I.C. § 45–615(4) must give up the protection afforded by I.C. § 45–301.

Here, upon substantial and competent although conflicting evidence the jury found the amount of wages due and owing to each plaintiff. The court properly concluded from the jury's findings that plaintiffs were entitled to a judgment for treble the amount of wages due. *Gilbert v. Moore, supra.* The court's conclusion that the wages due plaintiffs were "wrongfully withheld" is redundant, as we have already noted. We will not, therefore, consider that alleged error further.

The judgment is affirmed. Costs to respondents, Bobby, Albert and Jimmy Sage.

Attorney fees have not been requested on appeal. Fees are not awardable in this instance. *See Neal v. Idaho Forest Industries, Inc.,* 107 Idaho 681, 691 P.2d 1296 (Ct.App.1984).

WALTERS, C.J., and BURNETT, J., concur.