440 P.2d 355

**Wesley E. COFFELT, Plaintiff-Appellant,**

**v.**

**The STATE of Idaho, Defendant-Respondent.**

**No. 9936.**

Supreme Court of Idaho.

April 18, 1968.

Rehearing Denied May 15, 1968.

**236**

Moffatt, Thomas, Barrett & Blanton, Boise, for appellant.

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., Boise, for appellee.

SMITH, Chief Justice.

Appellant appeals from an order denying his petition for a writ of habeas corpus.

Appellant was sentenced in 1961 to twenty-five years servitude in the state penitentiary following conviction of the offense of rape, allegedly committed in Idaho County.

Appellant first filed a petition for a writ of habeas corpus in what is now the fourth judicial district of the State of Idaho, in and for Ada County; District Judge Charles R. Donaldson denied the petition. Following such denial appellant filed a second petition for writ of habeas corpus on August 7, 1965, again in the Ada County district court. A return to the petition was filed and Judge Merlin S. Young continued the matter to permit time to subpoena witnesses.

The district judge granted the State's motion for change of venue to Grangeville in Idaho County, for the convenience of witnesses.

Hearings were held in Grangeville in late 1965, District Judge Paul W. Hyatt presiding. Prior to the district court's final determination upon this second petition for writ of habeas corpus, appellant, on May 9, 1966, submitted a motion and demand that the proceeding be dismissed.

Appellant was due to be considered by the Idaho State Board of Corrections for possible reduction in his sentence and eligi-

bility for parole. He wrote several letters, prior to his request for dismissal, expressing concern over the delay in rendition of a decision in his habeas corpus proceeding, and expressing concern that the pending court action would interfere with his receiving objective consideration by the Board of Correction. Appellant's belief, as he stated, was that the board's policy was not to act on any application for a sentence reduction, as long as legal proceedings remained pending. On April 29, 1966, appellant wrote William Foster, his court-appointed attorney in the Idaho County proceedings, in pertinent part:

"I am going to try to explain why I am anxious to get this thing over with. I hope you can see my side of it also. I am about ready to go on the pardon board again and I do not have a chance if I still have anything in court. The policy with the board is not to act on any application for a time cut if there is any action in court at the time, and I only have until May 15th to decide which way I will go. There is only one thing for me to do, and that is to drop action on my writ at that time. * * *"

Appellant wrote similar letters to District Judges Hyatt and Young, urging that action be taken upon his petition, copies of which letters he attached to his petition.

Judge Hyatt stated in his order of dismissal that he had conferred with counsel Foster and with the warden of the Idaho State Penitentiary on May 9, 1966, following appellant's request for dismissal; and further stated that the warden advised that he had independently conferred with appellant, and that appellant repeated his desire for dismissal of the proceedings. Counsel Foster informed the court that appellant had requested him, Foster, to obtain a dismissal. Having thus satisfied himself that appellant's motion to dismiss was his free and voluntary act, Judge Hyatt, on May 10, 1966, entered an order of dismissal with prejudice.

Appellant filed his third and present petition for writ of habeas corpus on July 21, 1966, in the district court of the fourth judicial district in Ada County. Therein he alleged several violations of his constitutional rights, among them being, (1) that the court failed to subpoena certain of appellant's witnesses during the habeas corpus hearings in Idaho County; (2) that appellant's plea of guilty to the offense charged was obtained by coercion and promises because the Idaho County sheriff persuaded appellant's wife and daughter to quit writing letters to appellant; (3) that appellant entered his plea of guilty at a time when he was under the influence of drugs and not mentally competent to appreciate the nature of his acts; (4) that the judge who presided over the habeas corpus proceeding in Idaho County was prejudiced against appellant; (5) that appellant was denied a fair and impartial hearing in Idaho County because the community was impassioned against him; (6) that appellant's motion for order of dismissal of the habeas corpus proceedings was not his voluntary act, because the policy of the State Board of Corrections was such as to compel his request for dismissal.

District Judge Young, having considered appellant's third and present petition, denied it in a memorandum decision and order dated July 25, 1966. Appellant appeals from the order of denial.

Appellant's present petition for a writ of habeas corpus, in large part, restates the allegations which were contained in his second petition, heard by Judge Hyatt.

Appellant is not, as a matter of right, entitled to a subsequent writ unless he can present some new issue of fact or law upon which he has not had a hearing. Starkey v. State, 91 Idaho 74, 415 P.2d 717 (1966); Applications of Oppenheimer, 95 Ariz. 292, 389 P.2d 696 (1964), cert. den. 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed.2d 311 (1964); Petition of McGrath, 143 Mont. 498, 392 P.2d 76 (1964); Nicolay v. Kill, 161 Kan. 667, 170 P.2d 823 (1946). Had appellant awaited a decision from Judge Hyatt, and had it been unfavorable he could have appealed to the Supreme Court of this state,

which is the proper tribunal to review habeas corpus proceedings. Habeas corpus is not a substitute for an appeal or other revisory remedy. Stokes v. State, 90 Idaho 339, 411 P.2d 392 (1966); Burge v. State, 90 Idaho 473, 413 P.2d 451 (1966); Wilson v. State, 90 Idaho 498, 414 P.2d 465 (1966); Cobas v. Clapp, 79 Idaho 419, 319 P.2d 475 (1957), cert. den. 356 U.S. 941, 78 S.Ct. 785, 2 L.Ed.2d 816 (1958).

Appellant, however, raises one potentially significant new issue in his present petition. He alleges that he was informed, and firmly believed, that if he had legal proceedings pending in court, he would not be objectively considered for a reduction in sentence by the State Board of Corrections. He thus argues by implication that he was compelled under duress to dismiss his Idaho County habeas corpus proceeding in order to obtain fair consideration for a reduction in sentence, and that his constitutional rights were thus violated.

■ Reasonable access to the courts is a right guaranteed as against state action by the due process clause of the Fourteenth Amendment of the United States Constitution. This includes, specifically, right of access by state prisoners to state courts, and a deprivation of this right is therefore actionable under the Civil Rights Act. Hatfield v. Bailleaux, 290 F.2d 632, 636 (9th Cir. 1961); Smartt v. Avery, 370 F.2d 788 (6th Cir.1967). Moreover, the United States Constitution, Art. I, Sec. 9, cl. 2, squarely prohibits suspending "The Privilege of the Writ of Habeas Corpus." See also United States Constitution, Art. III and Amendments I and XIV. Constitutional rights may not be diminished or restrained by the denial of a privilege granted by law or regulation. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961).

The question thus specifically presented is whether appellant was effectually denied access to the state courts in his habeas corpus proceeding, by what he believed to be the policy of the State Board of Corrections. In other words, was he compelled to dismiss his Idaho County proceeding because of the alleged policy of such board, so that the dismissal was involuntary and not of his own free will? In considering this question, we are ever mindful that "the limitations upon the remedy afforded by habeas corpus should be flexible and readily available to prevent manifest injustice, for, as Mr. Justice Black has expressed it, the principles judicially established for the delimitation of the habeas corpus action 'must be construed and applied so as to preserve— not destroy—constitutional safeguards of human life and liberty.' " Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L. Ed. 1461, 146 A.L.R. 357 (1938); Council v. Clemmer, 83 U.S.App.D.C. 42, 165 F.2d 249 (1947); Mahaffey v. State, 87 Idaho 228, 392 P.2d 279 (1964); Johnson v. State, 85 Idaho 123, 128–129, 376 P.2d 704 (1962).

■ Determination of the voluntariness of a guilty plea, which is analogous in effect to appellant's request for an order of dismissal of the habeas corpus proceedings, must by definition depend on the court's view of defendant's subjective state of mind at the time of plea. United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y.1967); United States v. Miller, 243 F.Supp. 61 (E.D.Pa.1965), aff'd 356 F. 2d 515 (3rd Cir. 1966), cert. den. 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691 (1966). The court must consider the cumulative impact upon the defendant of "the totality of all the surrounding circumstances." United States v. Miller, supra; United States ex rel. Thurmond v. Mancusi, supra; Andrews v. Hand, 190 Kan. 109, 372 P.2d 559 (1962), cert. den. 371 U.S. 880, 83 S.Ct. 152, 9 L.Ed.2d 117 (1962).

■ In the situation at bar, appellant was well aware of the nature and consequences of his action. His letters to Judges Young and Hyatt and Attorney Foster, reflect a precise understanding of the significance of his request for dismissal. He had the advice and counsel of an attorney, who communicated the request to Judge Hyatt. Judge Hyatt's order of dismissal states that the

court conscientiously attempted to determine the voluntariness of appellant's request, and that being fully advised, it satisfied itself in the premises before granting the order. Appellant was notified prior to the entry of the order that such order would be with prejudice, and he made no objection thereto.

The reasoned, calculated decision of appellant, appraised of all the factors involved, constrains us to the view that his request for dismissal was voluntary and the product of his own free will. Whatever may have been the influence of his belief as to the policy of the Board of Corrections, he made a free and open choice to rely upon the clemency of that board instead of his claimed illegal conviction. He is now bound by that choice.

Appellant cites the case of Smartt v. Avery, supra, which he claims closely parallels the situation herein. In that case a state prisoner who filed a petition for writ of habeas corpus was subject to an amendment to the regulations of the Tennessee parole board which in effect assessed an additional year of incarceration prior to consideration for parole, upon any state prisoner who had filed a petition for writ of habeas corpus and which was denied. We think the factual situation of Smartt v. Avery, supra, to be too clearly distinguishable from the case at bar to be relevant herein.

Order affirmed.

TAYLOR, McFADDEN, and SPEAR, JJ., concur.

McQUADE, Justice (dissenting).

"The great writ" of habeas corpus is in Idaho a remedy constitutionally recognized and protected,[1] which "Every person unlawfully * * * restrained of his liberty, under any pretense whatever, may prosecute * * *, to inquire into the cause of such * * * restraint."[2] Absent certain

contingencies; the legislature itself, no less an agency to which the legislature has delegated some of its authority,[3] has no power to abridge this remedy, though it may make the writ more efficacious.[4]

In the present proceeding, in a memorandum decision accompanying the order appealed from, the district judge stated:

"It affirmatively appears from the present petition and the records submitted therewith that Mr. Coffelt asked for the dismissal of May 10, 1966, because he was scheduled to appear before the Board of Corrections for parole hearing and believed that his cause before the Board of Corrections would be furthered if he dismissed the habeas corpus matter."

Indeed, the court had to accept as true[5] appellant's allegations that he understood that the Board of Corrections as a matter of policy would not consider any application for parole while habeas corpus proceedings on behalf of an applicant were pending, and that such understanding persuaded him to request dismissal of his habeas corpus petition.

Thus, the question is squarely posed: can State action, specifically a policy under which the Board of Corrections refuses to consider at the time when it otherwise would consider—parole of a penitentiary inmate during the pendency of habeas corpus proceedings on his behalf, permissibly inhibit the inmate's seeking redress in the courts by means of habeas corpus? The present opinion of the court sidesteps the issue by resolving the proceeding in technical language of voluntariness. The majority refuses to probe the heart of the question here presented, whether the consideration which for present purposes admittedly swayed appellant's "calculated decision" was a consideration which this Court constitutionally can tolerate being placed before him. For reasons hereinafter

---

1. Idaho Const. art. I, § 5; Mahaffey v. State, 87 Idaho 228, 392 P.2d 279 (1964); Johnson v. State, 85 Idaho 123, 376 P.2d 704 (1962).

2. I.C. § 19–4201.

3. See Idaho Const. art. IV, § 7.

4. Idaho Const. art. I, § 5; Mahaffey v. State, supra n. 1.

5. Johnson v. State, supra, n. 1; Mahaffey v. State, supra, n. 1.

stated, I do not think this Court can tolerate in the present context the State action which concededly forced appellant's choice; therefore, I cannot agree that his requested dismissal could be found "voluntary" under controlling principles of law. I would reverse the district court's order denying the writ because of appellant's requested dismissal, remand for determination whether the policy of the Board of Corrections was as appellant alleges; and if so found, I would direct the district court to issue the petition for habeas corpus.

Under the guise of "voluntary dismissal with prejudice," this appellant is being blocked from access to the courts wherein he begs to exercise his constitutionally guaranteed right to petition for habeas corpus relief from an allegedly unjust conviction. The majority tells appellant: "Choose! A person in your situation must decide right now and forever which forum he prefers, Board of Corrections or the court." But manifestly, in Idaho both rights—even-handed consideration for parole (under appropriate stated conditions), and habeas corpus—are accorded to penitentiary inmates. Each of these rights is underpinned by distinct elements of public policy. Granting of parole is relatively discretionary, and should be based on rehabilitation; [6] habeas corpus protects and relieves "Every person" unjustly "restrained of his liberty." [7] To force a person to forego the constitutional right of habeas corpus in order to exercise the constitutionally sanctioned [8] State-conferred privilege of consideration for parole is to abridge the right; conversely, to grant the State privilege only to those who abstain from the constitutional right is to deny the privilege to exercisers of the right and in the process to withhold the constitutional guarantee of equal protection. This Court ought to find such a situation fundamentally intolerable.

But even if these principles were not readily apparent—as I think they are—specific authority supporting them in situations similar to that here presented is ample. Almost identical for pertinent purposes to the issue now before us was that recently facing the Sixth Circuit Court in Smartt v. Avery.[9] There the question was constitutionality of a corrections board written regulation which postponed hearing for parole at least one year after regular parole date for any penitentiary inmate who sought a writ of habeas corpus. The federal district court found the regulation "a restriction against * * * access to the Court for habeas corpus relief" and that it "is arbitrary and has a deterrent effect." At the request of petitioner, a penitentiary inmate, the court declared the regulation unconstitutional and enjoined the board from enforcing it. Affirming, the Sixth Circuit Court of Appeals stated that the right to petition for a writ of habeas corpus in the federal courts on a federal question "is squarely authorized by federal law" [10] (in the present proceeding one may substitute "squarely authorized by Idaho law") and moreover "is a [federal] constitutional right" [11] (here we may substitute "is guar-

---

6. I.C. § 20–223 provides that a parole "shall be ordered only for the best interests of society" and it "shall not be considered to be a reduction of sentence or pardon."

7. I.C. § 19–4201. "Every person unlawfully committed, detained, confined or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint."

I.C. § 19–4204. "Any court or judge authorized to grant the writ, to whom a petition therefor is presented, must, if it appear that the writ ought to issue, grant the same without delay."

I.C. § 19–4213. "If no legal cause is shown for such imprisonment or restraint, or for the continuation thereof, such court or judge must discharge such party from the custody or restraint under which he is held."

8. *Idaho Const. art. IV, § 7.*

9. 370 F.2d 788 (1967).

10. Id. at 790.

11. Ibid.

anteed by both the Idaho and United States constitutions"), and the court decided:

> "the regulation acts now as a present deterrent upon petitioner's freedom to exercise a present right. Only a prisoner with an inclination to play Russian roulette with a year of his life would be likely to file a petition for writ of habeas corpus under this regulation." [12]

By tour de force the majority opinion dismisses Smartt v. Avery as "too clearly distinguishable from the case at bar to be relevant herein." To the contrary, except in slight matters of degree I find Smartt v. Avery on all fours with respect to determining the outcome of the present proceeding.

Analogous with respect to the issue here presented are the recent cases in which courts have struck down prison board regulations prohibiting penitentiary inmates from assisting fellow inmates in preparation of habeas corpus petitions.[13] The underlying rationale of the decisions has been stated as follows:

> "To enforce the regulation in question is effectively to deny many of these inmates access to the state and federal courts in violation of the due process clause of the Fourteenth Amendment." [14]

Analogous too are the recent cases holding "it intolerable that one constitutional right should have to be surrendered in order to assert another." [15] For example, in the very recent case of Simmons v. United States, which held that the self incrimination clause of the Fifth Amendment would bar admission of incrimination testimony offered by defendant at a hearing to suppress real evidence seized allegedly in contravention of the Fourth Amendment, the United States Supreme Court said:

> "Those courts which have allowed the admission of testimony given to establish standing have reasoned that there is no violation of the Fifth Amendment's Self-Incrimination Clause because the testimony was voluntary. As an abstract matter, this may well be true. A defendant is 'compelled' to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forego a benefit, and testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the 'benefit' to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created. \* \* \* In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another." [16]

Finally, even if the fundamental issue here simply was whether appellant voluntarily had dismissed his petition for the writ, nevertheless the majority opinion still reaches in my estimation an erroneous conclusion. Obviously there are two separate aspects of voluntariness in the present context: (1) Full knowledge of the consequences of the available courses of action; (2) Free choice, uncoerced by any legally impermissible factor. The majority opinion is concerned primarily if not exclusively

12. Ibid.

13. Johnson v. Avery, 252 F.Supp. 783 (M.D.Tenn.1966), Rev'd, 382 F.2d 353 (6th Cir. 1967); Coonts v. Wainwright, 282 F.Supp. 893 (M.D. Fla. Feb. 29, White v. Blackwell, 277 F.Supp. 211 (N.D.Ga. Nov. 20, 1967). See also Rice v. Simpson, 274 F.Supp. 116 (M.D.Ala. 1967).

14. Coonts v. Wainwright, supra, n. 13, at 893 of 282 F.Supp.

15. Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247, 1259 (1968).

16. Ibid.

with the first aspect, knowledge. Thus, the opinion states:

> "Appellant was well aware of the nature and consequences of his action. His letters * * *, reflect a precise understanding of the significance of his request for dismissal. He had the advice and counsel of an attorney * * *.

> "The reasoned, calculated decision of appellant, apprised of all the factors involved, constrains us to the view that his request for dismissal was voluntary and the product of his own free will. Whatever may have been the influence of his belief as to the policy of the Board of Corrections, he made a free and open choice to rely upon the clemency of that board instead of his claimed illegal conviction. He is now bound by that choice."

But the knowledge aspect of voluntariness is of course relatively insignificant in the present context; the important aspect here is choice. Indeed, the majority opinion expressly recognizes that: "Constitutional rights may not be diminished or restrained by the denial of a privilege granted by law or regulation."

Nevertheless this insight proves to be but lip service for it is denied operative effect in the majority's decision.

Because of (1) Impermissible interference by executive action with exercise of the constitutional right of habeas corpus; (2) Due process of law; (3) Equal protection; or, (4) Sound judicial administration protecting access to the courts—on any or all of these grounds—this Court should reverse the district court's order and remand for a hearing to determine whether the Board of Corrections had at pertinent times a policy such as appellant alleges, with orders to accept appellant's renewed petition and to issue the writ of habeas corpus if the court finds the board's policy to be as appellant alleges.