537 P.2d 59

Application of Marie McGregor for a
Writ of Habeas Corpus.

**Marie McGREGOR, Petitioner-Respondent,**

v.

**Leland Everett PHILLIPS and Margie Louise
Phillips, husband and wife, Respondents to
Writ of Habeas Corpus, Appellants.**

No. 11745.

Supreme Court of Idaho.

June 4, 1975.

Rehearing Denied July 24, 1975.

C. H. Higer, Higer & McClendon, Emmett, for appellants.

Doug Owens, Caldwell, for petitioner-respondent.

McQUADE, Chief Justice.

This is a child custody dispute between the natural mother of the child, Marie McGregor, (hereinafter respondent) and the paternal grandmother, Margie Louise Phillips, and her husband, Leland Everett Phillips (hereinafter appellants). Respondent, a resident of Amity, Oregon, filed a Petition for Writ of Habeas Corpus in Idaho on April 15, 1974, to recover custody of her daughter, Jessica Ann Faith McGregor (hereinafter Jessica or child.) The child was living at the time with the appellants, residents of Homedale, Idaho. Appellants filed an answer opposing respondent's petition. Appellants are the step-father and mother of respondent's former husband, Robert McGregor, the natural father of the minor child.

The only issue of the marriage between respondent and Robert McGregor was the minor daughter, Jessica, born July 29, 1970. Respondent had physical custody of the child from the time of the birth to September 16, 1971. On September 16, 1971, respondent placed her child with the appellants, who were residing in Homedale, Idaho at the time. Respondent returned to her job in Oregon on or about the 16th or 17th of September, 1971, hoping to earn enough money to care for her child. She

returned to Idaho within a week to ten days, after becoming homesick for her child and quitting her job. She took up residence with the appellants until the end of September. Respondent found work as a waitress and moved out of the appellants' home into a small rental on or about October 1, 1971. Jessica remained with the appellants, as respondent was not earning sufficient money to provide for the needs of her child. Respondent resided in this house for approximately one month. She then returned to Oregon sometime in November of 1971 to live with her parents. Respondent testified at trial that she left for Oregon without her child because she was warned by Paul Phillips (a son of the appellants) not to go near the appellants' home.

While living in Oregon, respondent commenced an action for a divorce from Robert McGregor. On May 15, 1972, respondent obtained the divorce and in the decree was awarded custody of the child subject to reasonable visitation rights in the natural father. Neither the husband, Robert McGregor, nor the daughter, Jessica, appeared at the Oregon divorce proceedings. Respondent has remarried.

After the divorce proceedings Jessica lived with the appellants and after several attempts to obtain custody, respondent commenced this proceeding. A hearing was held on this Petition for Writ of Habeas Corpus on July 25, 1974, and the trial court granted the Writ. The trial court found that by voluntarily placing the child with appellants on September 16, 1971, respondent did not manifest an intent to abandon the child at that time, nor did she manifest an intent to abandon the child since that date. It found that at the time appellants took Jessica into their home, the respondent was 18 years of age; was having marital difficulties with her husband which resulted in the two of them living separate and apart; was suffering serious female problems after the birth of her child, which resulted in a hysterectomy; was receiving little or no financial support from either her family or her then husband; and was too emotionally immature to provide a suitable home for the child. The trial court also found that after respondent placed her child with the appellants and until the time the Petition for the Writ was filed, she attempted on several occasions to regain physical custody of Jessica; sought legal advice on how to obtain custody and attempted to stay in contact with her daughter by writing some letters to her, which letters were not read by appellants to the child. Furthermore, the court found that the respondent was a fit and proper person to have the care, custody and control of her child. It ordered that custody be transferred to the respondent. Since there was a long separation between the mother and daughter, the court concluded that it would be in the best interests of the child to have her custody transferred over a transitional period of several months. Appellants moved to amend the trial court's findings of facts, which was denied. This appeal is taken from the judgment of the district court. We affirm.

In the first two assignments of error, appellants argue that the trial court erred when it concluded that respondent had not abandoned her child, and when it found that the welfare and best interests of the child dictated an award of custody to the natural mother. In Ewing v. Gordon,[1] the Court stated:

"The long standing rule in Idaho is that the welfare of the child is of primary consideration in determining custody rights in children. In the implementation of this rule, this Court has consistently applied the presumption that a natural parent should have custody of his child as opposed to other lineal or collateral relatives or interested parties."[2]

1. 96 Idaho 424, 529 P.2d 1296 (Decided Dec. 26, 1974).

2. Id. at 425, 529 P.2d at 1297.

The appellants at trial introduced several witnesses in an effort to rebut the presumption in favor of the natural parent. They attempted to establish that respondent abandoned the child; that the respondent was morally unfit to have control of the child, and that they were better suited to raise the child than the natural parent. The trial court found against them on all three counts. Further, although not explicitly stating that the best interests of the child would be to award custody to the respondent, the trial court implicitly reached that conclusion. In conclusion of law numbered V., the trial court held:

"That it is in the best interest of said minor child that her physical custody temporarily remain in the Respondents and that said physical custody be transferred to the Petitioner over the course of a transitional period * * *."

This conclusion was based upon substantial and competent evidence and correctly applied the law.

In the third assignment of error, appellants contend that the trial court based its decision on an Oregon divorce decree which was void as it related to awarding custody of the child to its mother. Appellants argue that in order for a foreign divorce decree awarding custody of a minor child to have force and effect in this state, that minor child must be domiciled in the foreign jurisdiction at the time the divorce decree was entered. Since Jessica was never domiciled nor physically present in the State of Oregon during the pendency of the divorce action, appellants insist that the trial court erred in giving force and effect to the Oregon decree.

It is unnecessary for this Court to rule on the validity of that part of the Oregon divorce decree which awarded custody over Jessica to respondent, or to determine the full faith and credit impact, if any, of this foreign decree on the courts of this state. There is no indication in the record that any reliance was placed on the Oregon decree by the trial court in rendering its judgment.

■ In the final assignment of error, appellants contend that the trial court erred in refusing to grant their motion to amend the findings of facts. A motion to amend the findings of facts is addressed to the sound discretion of the trial court. The decision of the trial court to deny the motion will not be disturbed on appeal, where as in this case, the findings are supported by competent and substantial evidence.[3]

Affirmed. Costs to respondent.

McFADDEN, DONALDSON and SHEPARD, JJ., concur.

BAKES, Justice (dissenting):

There is a critical finding which is missing from this record which, in my opinion, necessitates a remand. The trial court did not enter any finding regarding whether or not it was in the child's best interest to change the physical custody from the grandparents, who have raised this child from infancy, to her natural mother, who is a stranger to her. I cannot agree with the majority's statement that the trial court implicitly reached the conclusion that it was in the best interest of the child to award custody to the mother. The trial court made three specific findings with respect to the parent-child relationship: (1) that the petitioner-mother had not manifested an intent to abandon the child; (2) that both the petitioner and the appellants were fit and proper persons to have the care and custody of the child; and (3) that it was in the best interests of the child that her custody not be immediately given to petitioner, but that it be transferred to the petitioner gradually during a transitional period. Conclusions of Law II, III and V, Clerk's Transcript, pp. 21–22. These conclusions can be more readily characterized as a determination by the trial court that if the parent had not aban-

<hr>

3. I.R.C.P. 52(a); Leonardson v. Moon, 92 Idaho 796, 451 P.2d 542 (1969).

doned her child, and if the parent was not unfit to have custody of the child, then the parent was automatically entitled to custody, rather than a characterization that it was in the best interests of the child for her custody to be awarded to her mother. Accordingly, I would remand this proceeding to the trial court for a determination of whether the child's best interests would require that her custody be awarded to her mother or remain with her grandparents. Application of Altmiller, 76 Idaho 521, 285 P.2d 1064 (1955).

In these cases the primary consideration should be the best interests of the child. *See* In re Ewing, 96 Idaho 424, 428, 529 P.2d 1296 (1974) (Bakes, J., concurring specially). I agree with the majority that there is a presumption that the natural parent should have custody of the child as opposed to other relatives or interested parties, but in cases such as this, in which the non-parental party has introduced sufficient evidence to rebut the presumption, the trial court must weigh the evidence presented and decide the case, not on the basis of any presumption, but on whether or not a change in the actual custody is in the best interests of the child. As I read the conclusions of law of the trial court, it appears to me that the trial court may have concluded that if the mother has not "forfeited" her rights to the child by abandonment, or was not otherwise unfit by her conduct, then the parent was automatically entitled to custody. But where, as in this case, the parent has turned the child over to its grandparents when she was just an infant, and the grandparents are really the only parents which the child has ever known, and where the mother is a stranger to the child as the petitioner is in this case, to automatically change the custody of the child to the mother without an express finding that it is in the child's best interests for the custody to be so changed, is to reduce the child to the status of a chattel. Children are not chattels, nor are they to be awarded to the least blameworthy of two litigants. The primary consideration in

these cases should be what is in the best interests of the child, after considering all of the factors involved. Because the record in this case does not disclose that the trial court made an express finding that it was in the best interests of the child for the custody to be transferred from the grandparents to the mother, I would remand the case for further proceedings to make that critical finding.