606 P.2d 933

In the Matter of Shauna Sue REVELLO
and Benjamin Jay Revello,
Minor children.

Patsy A. REVELLO, Petitioner-Appellant,

v.

John J. and Lucia REVELLO,
Respondents.

Nos. 12853, 13099.

Supreme Court of Idaho.

Dec. 7, 1979.

Rehearing Denied Feb. 15, 1980.

John F. Greenfield, Boise, for petitioner-appellant.

John D. Hansen of Hansen & Boyle, Idaho Falls, for respondents.

BAKES, Justice.

## I

Petitioner appellant Patsy A. Revello appeals from an order of the district court which denied her petition for habeas corpus filed to obtain custody of her two minor children from respondents John and Lucia Revello, the children's paternal grandparents. We affirm.

Patsy Revello married Gary Revello, the son of respondents John and Lucia Revello, in 1969. A daughter, Shauna, was born in 1970 and a son, Benjamin, in 1972. Marital problems developed which led to a trial separation by Patsy and Gary in March, 1974. Custody of the two children was at this time given to Gary's parents, John and Lucia Revello, respondents herein, by mutual consent of both the children's parents and grandparents. In May, 1974, after some discussion and consideration by both the parents and grandparents, Gary and Patsy Revello each executed a "Consent to Appointment of Co-guardian and Waiver of Notice" in which they consented to appointment of respondents John and Lucia Revello as co-guardians of the persons of Shauna and Benjamin. They also waived any rights which they as natural parents may have had to notice of hearings in any subsequent proceedings with respect to the guardianship appointment. A hearing in the matter was held in the magistrate division of the district court of the Seventh Judicial District, in and for the county of Bonneville, on July 14, 1974. On this date an order of co-guardianship was entered by the magistrate which stated that the best interests of the two minor children would be served by the appointment of the grandparents as co-guardians of the children. Letters of guardianship were issued by the court to the respondents, John and Lucia Revello.

In the fall of 1974 Gary and Patsy made an attempt at reconciliation and the two children were returned to them by the grandparents. The reconciliation attempt failed however. The children were returned to their grandparents' home in November of 1974 and Gary and Patsy separated.

Gary obtained a default divorce from Patsy in December, 1974. The court in the divorce proceeding granted Gary and Patsy joint custody of Shauna and Benjamin. However, the grandparents were not made parties to that proceeding, and the record does not indicate that the divorce court was aware of the guardianship. The couple spent Christmas, 1974, at Gary's parents' home in Idaho Falls with the two children. Patsy then moved to Boise and obtained employment, and Gary returned to Pocatello to complete a pharmacy program at Idaho State University. Shauna and Benjamin remained with their grandparents in Idaho Falls.

Patsy made visits and phone calls to the children in Idaho Falls in 1975 and 1976 and took temporary custody of the children during holidays and vacations in those years. The bulk of the children's time, however, was spent at their grandparents' home in Idaho Falls during those two years. In 1977 both Gary and Patsy began attempts to obtain custody of the children from John and Lucia Revello. At that time, the grandparents were reluctant to allow the children to leave their home, feeling that neither of the two parents was capable of properly caring for the children and that the children had become established in the grandparents' home in Idaho Falls, making a change in custody detrimental to the children's emotional wellbeing.

On November 23, 1977, Patsy filed a "Petition for Writ of Habeas Corpus" in the Bonneville County district court in an attempt to obtain custody of her children.[1] A

1. At oral argument counsel related that Patsy Revello had earlier undertaken to have John and Lucia Revello's guardianship over Shauna and Benjamin terminated. Our review of the files in the Seventh Judicial District Court clerk's office reveals that on September 28, 1977, Patsy filed a "Petition to Terminate Co-Guardianship" in the district court of Bonneville County. The record of the magistrate's division of that court relating to the guardianship of the Revello children, however, indicates that no action was taken on the petition subse-

two day trial was held in the matter on November 30, and December 1, 1977. Patsy, the grandparents, and several of Patsy's friends testified as to Patsy's fitness to serve as a parent for the children, and psychiatric and psychological evidence was admitted. The trial court ruled that Patsy had not abandoned her children, as was maintained by the grandparents, but stayed the writ of habeas corpus pending home studies of both Patsy's and the grandparents' homes during visits by the children to each. In January, 1978, after receiving reports on the home studies, the trial court awarded the grandparents "temporary custody" of the children until the end of 1977–78 school year. The district court granted Patsy custody during the children's 1978 summer school vacation. A final decision on the custody question was reserved until August, 1978, at which time the court indicated that it would review the case and decide then which party should have custody of the two children.

In August, 1978, following the children's summer stay with their mother in Boise, the trial court, by. agreement of the parties, conducted an interview with the children. In accordance with the parties' agreement, the parties, their counsel, and the court reporter were not present at the interview. On August 22, 1978, the trial court issued a memorandum decision finding that Patsy was not emotionally fit to raise her children and that the best interests of the children would be served by permanently quashing the writ of habeas corpus. The court in this order referred to the interview it conducted with the children, stating that in it Shauna had indicated a strong desire to live with her grandparents, and not her mother.

Findings of fact, conclusions of law, and judgment were entered in October, 1978, which reiterated the court's belief that the best interests of the children would be served by permanently quashing the writ of

habeas corpus and leaving custody of Shauna and Benjamin with respondents. The trial court stated in its findings of fact that the children had experienced emotional and behavorial problems at the time of the parents' divorce and that while in the custody of respondents those problems had largely been resolved. The court found that petitioner Patsy Revello "has a history of emotional immaturity and instability, and inability to properly maintain, care and provide for the proper training, education and emotional needs of said children, and has not shown herself to be emotionally fit to have custody of the said minor children." The court found the respondent grandparents to be fit and capable to have custody of the children and determined that the best interests and welfare of the children would be served by leaving custody of the children with their grandparents.

Petitioner Patsy Revello maintains on this appeal that the trial court made several errors in quashing the writ of habeas corpus. She claims that I.C. § 32–1007[2] establishes a statutory presumption that the natural parents of minor children are entitled to the care, custody and control of their children absent an affirmative showing that the parents had either abandoned their children or were unable to care for the children. Petitioner asserts that the trial court denied her the presumption that natural parents should raise their own children by applying the "best interests of the child" standard to this case. Petitioner also claims that there is no substantial or competent evidence in the record to support the trial court's finding that she is unfit to care for her children. She claims that the trial court erred in placing the burden of proof on her to show that she is emotionally fit so as to have custody; that it was error to base a decision to give the grandparents custody in part upon the fact that the chil-

---

quent to filing it. Two months later Patsy filed this habeas corpus petition.

**2.** "[I.C.] 32–1007. RIGHTS OF PARENTS OVER CHILDREN.—The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings.

If either the father or mother be dead or be unable or refuse to take the custody or has abandoned his or her family, the other is entitled to the child's custody, services and earnings."

dren have spent a large part of the time since the parents' 1974 divorce in the grandparents' custody; that the fact that the children suffered emotional problems during the breakup of their parents' marriage which have since been alleviated is irrelevant to a present decision regarding custody; and that the trial court acted improperly in basing its final decision in part upon statements by the two minor children made in an interview between the children and the trial court outside the presence of the parties, their attorneys, and a court reporter, even though she had stipulated to that procedure through her counsel.

## II

■ We affirm the order of the trial court quashing the writ of habeas corpus, although not for the reasons stated by the trial court in arriving at its decision. This Court has consistently held that "[w]here the order of the lower court is correct but entered on a different theory, it will be affirmed on the correct theory." *Robison v. Compton*, 97 Idaho 615, 617, 549 P.2d 274, 276 (1976); *Anderson & Nafziger v. G. T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979); *City of Weippe v. Yarno*, 96 Idaho 319, 528 P.2d 201 (1974); *Rinehart v. Farm Bureau Mutual Insurance Co. of Idaho*, 96 Idaho 115, 524 P.2d 1343 (1974); *Church v. Roemer*, 94 Idaho 782, 498 P.2d 1255 (1972). The writ of habeas corpus was properly quashed by the district court for the reasons set out below.

■ The Idaho version of the Uniform Probate Code governs the appointment, authority, responsibility and removal of guardians of minors. I.C. §§ 15–5–201 to –212. Under I.C. § 15–5–209, a court appointed guardian of a minor has the "powers and responsibilities of a parent who has not been deprived of custody of his minor and unemancipated child . . . ." Unless it is otherwise indicated in the order of guardianship, a court appointed guardian of a minor child is entitled to the custody of the ward. Custody is but an incident of guardianship. I.C. § 15–5–209; *Miller v. Miller*, 158 Conn. 217, 258 A.2d 89 (1969),

*cert. denied*, 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 241 (1969); *In re Bunting*, 311 A.2d 855 (Del.1973); *Johnson v. Johnson*, 87 Nev. 244, 484 P.2d 1072 (1971). Respondents John and Lucia Revello attached the magistrate's order of July 14, 1974, appointing them legal co-guardians of the two minor children to their "Return to Writ of Habeas Corpus" filed in the district court on November 30, 1977, asserting that the order constituted the legal basis for their custody of the two children. At the time of the habeas corpus hearing on November 30, and December 1, 1977, that order of co-guardianship, until properly terminated or modified by court order, gave the respondents the rights and responsibilities of custody over the two minor children. I.C. §§ 15–5–201 to –212. I.C. § 15–5–210 to –212 govern the procedures for termination or modification of an order of guardianship of a minor child. I.C. § 15–5–210 provides that the guardian's authority and responsibility will terminate *only* "upon the death, resignation or removal of the guardian or upon the minor's death, adoption, marriage or attainment of majority . . . ."

■ The district court erred in failing to recognize the right to custody which the magistrate's order of co-guardianship entered July 14, 1974, granted to respondents John and Lucia Revello. The magistrate's order appointing respondents co-guardians of the two minor children, Shauna and Benjamin, is a binding adjudication that the best interests of the minor children would be served by the requested appointment. I.C. § 15–5–207(b); *see Davis v. Davis*, 253 Cal.App.2d 754, 61 Cal.Rptr. 297 (1967).

■ The Petition for Writ of Habeas Corpus filed by the natural mother in this case is an impermissible attempt to collaterally attack the order of guardianship issued by the magistrate's court in July of 1974. This Court has on many occasions indicated that a habeas corpus proceeding cannot be used to obtain a general review of alleged errors committed by another court in a prior proceeding related to the person or persons whose custody is sought via a habeas

corpus proceeding. In *Stokes v. State*, 90 Idaho 339, 411 P.2d 392 (1966), Justice McFadden quoted at length from the earlier decision of this Court in *Ex parte Olsen*, 74 Idaho 400, 263 P.2d 388 (1953), in indicating the proper inquiry to be undertaken in a habeas corpus action.

"If it appears that the court issuing the process by which the petitioner is held, had jurisdiction of the subject matter, jurisdiction of the person of the accused, and jurisdiction to make and issue the particular order or process by which the accused is held, and the order or process is valid on its face, he cannot be discharged by habeas corpus.

"Habeas corpus is not a corrective remedy, but is concerned only with defects in a proceeding which operate to render a judgment rendered or process issued, therein absolutely void. It cannot be invoked for use in correcting mere errors or irregularities in the proceedings of a trial court which are not jurisdictional and, at the most, render a judgment merely voidable. The writ of habeas corpus was neither intended to have nor does it have, the primary function of a proceeding for the review of errors committed by a trial court within its jurisdiction, and consequently, it does not have the force and effect of such a proceeding as an appeal, error proceeding, or writ of certiorari. The proper scope of the remedy of habeas corpus as a means of a collateral attack upon a judgment or process which is absolutely void is not to be distorted by an attempt to make the proceeding available as one in the nature of an appeal or error proceeding * * *. In other words, a writ of habeas corpus is not a writ of error or a writ in anticipation of error and cannot operate as, be converted into, or serve as a substitute for such writ * * *." 74 Idaho at 402–03; 263 P.2d at 390.

▪ A habeas corpus proceeding is not a substitute for an appeal or other revisory remedy. *Dionne v. State*, 93 Idaho 235, 459 P.2d 1017 (1969); *Coffelt v. State*, 92 Idaho 235, 440 P.2d 355 (1968); *King v. State*, 91 Idaho 97, 416 P.2d 44 (1966); *Wilson v. State*, 90 Idaho 498, 414 P.2d 465 (1966); *Burge v. State*, 90 Idaho 473, 413 P.2d 451 (1966).

This Court's remarks concerning the scope of inquiry in a habeas corpus proceeding have occurred in actions brought by criminal defendants seeking to challenge the validity of their criminal convictions. However, the scope of inquiry in a habeas corpus proceeding in which petitioner seeks custody of a minor child is similarly limited where the custody issue has previously been considered by another court in the state.

"An order appointing a guardian for an infant is conclusive of the right of such guardian to the infant's custody, until reversed by a direct proceeding, and it cannot be assailed in a collateral way by habeas corpus proceeding, except where the order is shown to be invalid, as for want of jurisdiction." 39 C.J.S. Habeas Corpus, § 129 (1976).

In *Weigel v. Grossnickle*, 100 Ohio App. 106, 135 N.E.2d 894 (1954), it was held that an order appointing a guardian made by a probate court could not be impeached collaterally. The court held that where the petitioner in a habeas corpus action had an adequate remedy in the probate court which issued letters appointing guardians over the subject minor children and which had exclusive, continuing jurisdiction over the matters concerning the guardianship, the petitioner could not seek custody of the children in a habeas corpus proceeding in another court. The court held that "exclusive, continuing jurisdiction upon matters of custody rested in Probate Court, and appellant has an adequate remedy at law in that forum, so that the petition in habeas corpus was properly dismissed." 135 N.E.2d at 896.

The limited scope of the inquiry to be undertaken by a habeas corpus court in a child custody dispute where custody has already been determined by an order of another court in the state is exemplified by *Tree Top v. Smith*, 577 F.2d 519 (9th Cir. 1978). There, the petitioner's minor child had been adopted by others in an Idaho

state court proceeding. Subsequent to the adoption the natural mother, petitioner, filed a petition for writ of habeas corpus in United States District Court in the District of Idaho in an attempt to regain custody of the child. The federal district court, Judge J. Blaine Anderson presiding, dismissed the petition. The Ninth Circuit Court of Appeals affirmed, stating that:

"The crux of [appellant-petitioner's] petition relates to the merits of a custody dispute, and she had a full and fair opportunity to litigate those issues in the state court. Moreover, she had the statutory right to appeal the decree in the Idaho system. Under the circumstances, she is now bound by the state judgment and the federal court will not entertain her complaint merely because she has reframed the custody dispute as a petition for habeas corpus." 577 F.2d at 521.

Our holding today is consistent with *Wood v. District Court*, 181 Colo. 95, 508 P.2d 134 (1973), in which the Colorado Supreme Court quashed a writ of habeas corpus in circumstances similar to those here. As the result of a divorce decree the mother in that case had been given custody of the children, and the father had subsequently filed a motion for change of custody. After having refused to redeliver one of the children to the mother at the end of a visitation period the father filed an original proceeding in habeas corpus seeking to obtain custody of the child. The Colorado Supreme Court noted that "the court in which the custody decree was issued has continuing jurisdiction over the matter of custody . . . of the children," just as the magistrate's court which issued the co-guardianship order in this case has continuing jurisdiction over the custody of the two children involved in this case. The Colorado Supreme Court then held that only the court which issued the custody decree could modify or change that order, and in a habeas corpus proceeding another Colorado court could only issue an order enforcing the decree of the court which had issued the original custody order. The Colorado Court reasoned:

"In the situation at bar where the original custody award and the subsequent habeas corpus proceeding are in the same state, but in different courts, other jurisdictions have held with persuasive reasoning that, although the habeas corpus court would not have jurisdiction to test the wisdom of or to modify the custody decree, it can and should make the writ permanent to enforce the decree and should order the child returned to the one lawfully entitled to custody. *See* Annot., 4 A.L.R.3d §§ 10 and 16. Any other disposition of the habeas corpus would result in a conflict of jurisdiction and produce confusion in the orderly process of the law." 508 P.2d at 135.

*See also State by St. Louis County Welfare Dept. v. Niemi*, 284 Minn. 225, 169 N.W.2d 758 (1969); *State ex rel. Dubinsky v. Weinstein*, 413 S.W.2d 178 (Mo.1967); *Warman v. Warman*, 496 S.W.2d 286 (Mo.App.1973); *In re Taylor*, 421 S.W.2d 57 (Mo.App.1967); *In re Barnes*, 356 P.2d 363 (Okl.1960); Annot., 4 A.L.R.3d 1277, 1309–12 (1965).

In *Andersen v. Crapo*, 99 Idaho 805, 589 P.2d 957 (1978), this Court recently held that a petition for writ of habeas corpus could be utilized by the natural parents of a minor child to challenge the validity of an adoption decree obtained by the respondent Crapos. The petitioners in that case alleged that they had revoked their consent to the adoption prior to the consent being filed in the adoption proceeding, and that because their consent under Idaho law served as a notice and appearance in the adoption proceedings the adoption decree was void. A majority of this Court agreed, stating that the petitioners' contention that they had revoked the consent to the adoption before the adoption occurred "is inextricably bound up with the Andersens' counter argument on the merits, namely, that they withdrew their consent, were *never parties* to the proceedings since they were never served with notice, and that the adoption decree is therefore void." 99 Idaho at 810, 589 P.2d at 962 (emphasis in original). This Court held that the effect of the petitioners' revocation of their consent to the adoption was to vitiate the notice to the Andersens which procedural due process re-

quires. The lack of such notice made the adoption order void and was properly raised by the petition for writ of habeas corpus. This result is consistent with the general rule, expressed above, that a habeas corpus proceeding is concerned only with defects in a proceeding which operate to render a prior judgment void.

In the case at bar, no questions concerning the validity of the guardianship order were raised in the habeas corpus proceedings below or have been disclosed on appeal. In fact the validity of the guardianship order affirmatively appears in the record.

■ The two minor children involved in this dispute resided in Bonneville County at the time this habeas corpus proceeding was commenced in November, 1977, and therefore, the magistrate division of the district court in Bonneville County was the only court with jurisdiction over any matters relating to the guardianship. *See* I.C. § 15–5–211(b).[3] The district court should have denied appellant's petition for writ of habeas corpus on the basis that the magistrate's order appointing respondents coguardians of the two minors gave custody of the persons of said minors to the respondents, and that the order could not be collaterally attacked in the habeas corpus proceeding.

We affirm the district court's order quashing appellant's petition for writ of habeas corpus for the foregoing reasons. Petitioner Patsy Revello is entitled under the provisions of the Uniform Probate Code to pursue her "petition to terminate coguardianship" in the magistrate's division which issued that order or, if the children no longer reside in Bonneville County, in the magistrate's court in the county where the children reside. I.C. §§ 15–5–211 and –212. The magistrate's order of guardianship is a valid final order of that court,

however, and is not subject to a collateral attack in a habeas corpus proceeding in the district courts of this state.

Affirmed. Costs to respondent.

DONALDSON, C.J., and McFADDEN, J., concur.

SHEPARD, Justice, dissenting.

In my judgment, the opinion of the majority today cannot be reconciled with our most recent decision in the *Matter of Andersen*, 99 Idaho 805, 589 P.2d 957 (1978), and hence I must dissent. Although I did not agree with the decision of the majority in *Andersen*, I would accept it as the established law of this state. To do otherwise will only compound the confusion that this Court has allowed for too many years to exist in the area of child custody disputes between parents and nonparents. On the basis of *Andersen*, I feel the petitioner's habeas corpus action must be held as proper and, therefore, would reach the issue ignored by the majority today, *i. e.*, whether the district court erred in granting custody of the two minor children to their grandparents rather than to their mother.

This Court in *Andersen* held that an adoption decree issued by a magistrate court could be reviewed in a habeas corpus action brought by the child's parents in the district court of the same judicial district. What the majority today neglects to discuss, however, is the reasoning integral to the *Andersen* decision. In *Andersen*, the Court analogized the habeas corpus proceedings to a Rule 60(b)(3) motion for relief from judgment due to fraud, misrepresentation, or other misconduct of an adverse party. There the Court stated:

"We are unable to see where the Crapos could complain had the [petitioners] sought relief by a Rule 60(b) motion, or

---

**3.** The official comment to I.C. § 15–5–211(b) provides:

"Under Section 1–302 [5–302], the Court is designated as the proper court to handle matters relating to guardianship. The present section is intended to give jurisdiction to the forum where the ward resides as well as to the one where appointment initiated. This

has primary importance where the ward's residence has been moved from the appointing state. Because the Court where acceptance of appointment is filed may as a practical matter be the only forum where jurisdiction over the person of the guardian may be obtained (by reason of Section 5–208), that Court is given concurrent jurisdiction."

where they can complain where relief was sought in a habeas corpus proceeding. In either event, the issue to be decided is identical, *i. e.*, did they have the right and cause to revoke their consents." *Id.* at 809, 589 P.2d at 961.

By a parity of reasoning, the habeas corpus proceeding in the instant case can be analogized to a petition to remove a guardian under I.C. § 15–5–212, which states:

"(b). After notice and a hearing on a petition for removal or for permission to resign, the court may terminate the guardianship and make any further order that may be appropriate."

In my judgment, the clear purpose of petitioner's habeas action was to terminate the guardianship appointment, although admittedly such is not explicit from the writ itself. Such is clear since the appointment of the guardian was the only legal reason why petitioner was barred from instantly gaining custody of her natural children.

The Court held in *Andersen* that the district court would have had jurisdiction to hear a Rule 60(b) motion, and hence I would hold that the district court in the instant case would have had jurisdiction to hear an I.C. § 15–5–212 petition to remove a guardian.

I.C. § 15–5–211, dealing with "proceedings subsequent to appointment—venue" states in pertinent part, "(a) The court where the ward resides has concurrent jurisdiction with the court which appointed the guardian * * *." I.C. § 15–1–201(6) defines "court" as the district court. Since the wards in the instant case reside in Bonneville County, the petitioner here properly brought the suit before the district court of the seventh judicial district. Dealing with the question of whether that district court should retain jurisdiction, I.C. § 15–5–211(b) provides:

"If the court located where the ward resides is not the court in which acceptance of appointment is filed, the court in which proceedings subsequent to appointment are commenced shall in all appropriate cases notify the other court * * *

and after consultation with that court determine whether to retain jurisdiction or transfer the proceedings to the other court, whichever is in the best interests of the ward. * * *."

The intent of I.C. § 15–5–211(b) is to maintain the guardianship matter before the court which initiated a full inquiry into the case, thereby avoiding relitigation of issues and conflicting decisions by different courts: "The welfare of children * * * requires above all else an authoritative and orderly disposition of the custody dispute * * *." H. Clark Jr., The Law of Domestic Relations 576 (1969) (wherein is discussed the general problem of continuing litigation over child custody). Hence, it cannot be said that the district court abused its discretion by retaining jurisdiction in this case, albeit the guardianship had been initiated in the magistrate court. In the present case, the guardianship proceeding in the magistrate court was perfunctory, based only on the parents' written consents to guardianship and the apparent fitness of the grandparents. No in-depth inquiry was made into the interests and fitness of the children, parents and grandparents by that magistrate court. Thus, there was no danger of relitigating important issues by having trial thereon in the district court. Further, nearly four years had elapsed between the guardianship appointment in the magistrate court and the filing of this action in the district court. The best interests of the wards would have been served by a comprehensive investigation into the interests and fitness of the parties by the district court.

I would hold under *Andersen* that whether the present action be labeled "habeas corpus" or "petition to remove a guardian," the district court had jurisdiction and the issue remains identical, *i. e.*, should the custody of the children remain with the guardians or be transferred to the natural parents.

Since I would hold that the district court had jurisdiction, I would then examine the findings of fact, conclusions of law and decision of the district court to determine if those findings are supported by the facts in

the instant case. I would hold they are not and reverse.

In the area of custody disputes between parents and nonparents, it is an understatement to say that Idaho law is not a model of clarity. In custody disputes between parents and nonparents it is an oft-stated rule in Idaho that the child's best interests are of primary importance, and are realized by applying a presumption in favor of parental custody. *E. g. Matter of Andersen*, 99 Idaho 805, 589 P.2d 957 (1978); *McGregor v. Phillips*, 96 Idaho 779, 537 P.2d 59 (1975); *In re Ewing*, 96 Idaho 424, 529 P.2d 1296 (1974); I.C. § 32–1007. A showing of natural parentage will establish in that parent a prima facie case for custody. The burden then shifts to the nonparent to prove that the parent has somehow forfeited his right to custody. *In re Ewing, supra; Blankenship v. Brookshier*, 91 Idaho 317, 420 P.2d 800 (1966); *Freund v. English*, 83 Idaho 140, 358 P.2d 1038 (1961). Proving forfeiture consists of showing by clear and convincing evidence that the parent has abandoned the child or is unfit to care for it. *Pullman v. Klingenberg*, 95 Idaho 424, 510 P.2d 488 (1973); *In re Ewing, supra*.

These guidelines have been cited by almost every Idaho case dealing with child custody disputes between parents and nonparents, yet such consistency is deceptive. In a rather bewildering fashion, these guidelines, although cited, have often been ignored. This confusion in Idaho case law centers mainly around the fact situation where the child has been in the nonparents' custody for some period of time prior to trial. Some Idaho cases have held that when the nonparent has had custody of the child for a number of years, the custody presumption in favor of the parents disappears and the sole criteria is the best interests of the child test. *In re Ewing, supra*, (step-father awarded custody over father where step-father had custody of the children for over four years); *Yearsley v. Yearsley*, 94 Idaho 667, 496 P.2d 666 (1972) (nonparents granted custody of child over father where nonparents had custody of child for seven years); *Application of Altmiller*, 76 Idaho 521, 285 P.2d 1064 (1955)

(grandparents granted custody of child over father where grandparents had custody of child for nearly seven years). The reasoning of these cases in refusing to grant custody to the parents focused on the length of time the child had spent with the nonparent, and the reluctance to tear the child "away from familiar scenes, friendly faces, and kindly voices * * *." *Application of Altmiller, supra* at 527, 285 P.2d at 1068.

Other Idaho cases have continued to apply the presumption in favor of parental custody even though the child has been in the nonparents' custody. *Blankenship v. Brookshier, supra* (father was granted custody of his child who had lived his entire life, ten years, with his aunt); *McGregor v. Phillips, supra* (mother was granted custody of her child who had lived with grandparents for three years).

In the area of child custody disputes between parents and nonparents, this Court is truly caught up in a welter of conflicting policies. Our legislature has mandated the right of a parent to the custody of its child. I.C. § 32–1007. On the other hand, recognizing the vagaries of human nature, the legislature has provided that a parent may be deprived of the custody of its child through mechanisms initiated by the state. *See* I.C. §§ 16–1601—1629. Also, the legislature has recognized the possibility of froward circumstance and provided for the interchange of custody from a parent to a nonparent by guardianship and adoption procedures. *See* I.C. §§ 15–5–201—212; 16–1501—1509. This Court has compounded the confusion through its case-by-case determination of parent-nonparent custody disputes without the establishment of criteria which may be understood and followed by our lower court system.

There really can be no dispute but that such cases present to this Court the most difficult and Solomanlike decisions. It is also true that

"[t]oo frequently there is attributed to law and its agents a magical power—a power to do what is far beyond its means * * *. The law, so far as specific indi-

vidual relationships are concerned, is a relatively crude instrument. It may be able to destroy human relationships; but it does not have the power to compel them to develop." J. Goldstein, A. Freud & A. Solnit, Beyond The Best Interests of The Child (1973) at 49–50.

While admittedly the courts are "blunt instruments" in this area of the law, the alternatives seem to be an acceptance of the "best welfare" of the child, perhaps exemplified by J. Goldstein, et al., supra, who, while presenting widely known, but frequently ignored, considerations, perhaps give over-attention to the areas of psychology and psychiatry in its discussion of child custody problems. Even in those important areas, we are required to balance and choose between alternative theories, i. e., the beliefs of some that psychology and psychiatry have progressed little beyond the witchcraft rituals of burning of feathers and shaking of rattles as contrasted with those who believe that psychologists and psychiatrists can and do indeed cure all the ills of mankind and its society.

On the other hand are the views expressed by Dimond, J., in his dissent in Turner v. Pannick, 540 P.2d 1051 (Alaska 1975):

"I believe the basic concept that governs this case is the fundamental natural right of parents to nuture and direct the destiny of their children. This is a truth which one discovers by reason, and has the status of knowledge rather than mere opinion. Nature has instilled in man a love for his children; an intimate bond, by nature, exists between parent and child. * * *

If the rule were otherwise, we would be taking a step toward a totalitarian government. Children could be removed from their parents' custody at the will of the state, depending on what some governmental petty tyrant decides is meant by the term 'welfare' or 'best interests' of the children. Such a state of affairs would be entirely contrary to the form of government envisioned by the founding fathers of our nation." Id. at 1055–56.

This Court, as indicated by the above cited cases, has most often laid down the rule that in custody disputes between a parent and a nonparent, a parent will prevail absent a showing that the parent has abandoned the child or is unfit. It is only in those cases where the nonparent has had custody for some considerable period of time that the Court has, in any large measure, departed from its otherwise rule. Obviously, the instant case falls within that category of cases since the grandparents here have had "custody" of the children for five years. In other respects, however, the instant case differs, in that the parent here maintained a continuity of contact with the children, and under the facts presented in this record, could not be deemed to have abandoned the children. The instant case also differs from Andersen, in my judgment, in that the parent demonstrated no intent to permanently transfer custody since the parent here only consented to a guardianship as contrasted with an adoption. On the other hand, the actions of the nonparent-custodian here differ from those in Mitchell v. Pincock, 99 Idaho 56, 577 P.2d 343 (1978), since there the nonparent engaged in a course of conduct requiring prolonged litigation including the defiance of court orders and interjurisdictional transfer of the child.

I am not omniscient enough to predict how long will be too long a period of time in which a nonparent may retain custody of a child and thereafter be assured of continued custody because to rule otherwise would traumatize the mind of the child. In my judgment, it is enough to say that on the record before us, there is nothing to suggest that the parent here has abandoned the children, that the parent is unfit to have the custody of the children, or that the best interests of the children will be served by a continuation of custody in the nonparents because the minds of the children would be traumatized by a change in custody. See Bennett v. Jeffreys, 40 N.Y.2d 543, 387 N.Y. S.2d 821, 356 N.E.2d 277 (1976).

If this Court is to adopt a "welfare of the child" standard, I would hold that a nonparent bears the burden of showing that it would be severely detrimental to the child

to undergo such transfer of custody. I would hold that showing of detriment to the child would require more than mere evidence that the child has formed a psychological attachment to the nonparent. *See Bennett v. Jeffreys, supra; Turner v. Pannick, supra.*

However, today I would hold that there is no clear and convincing evidence meeting any of the above standards, and our review should be limited only to determining whether there is substantial and competent evidence to support the findings of the trial court. *Matter of·Estate of Courtright v. Robertson,* 99 Idaho 575, 586 P.2d 265 (1978); I.R.C.P. 52(a).

The district court expressly found that no abandonment had occurred. The district court, however, found that the parent of the child was emotionally unfit. My view of the record indicates it to be devoid of any substantial, competent evidence showing lack of emotional fitness. At best, in my judgment, the record demonstrates only that certain behavior and psychological problems of the children have been remedied while they were in the custody of the grandparents. The inference that they would have not been cleared up in the custody of the mother is without foundation. Likewise, the children's expressions of their desire to remain with their grandparents in familiar surroundings are, at their age, neither surprising, unusual nor controlling. *See Posey v. Bunney,* 98 Idaho 258, 561 P.2d 400 (1977).

I would reverse the judgment of the district court and remand the cause with directions that judgment be entered for the petitioner.

BISTLINE, Justice, concurring in dissent with SHEPARD, J.

Justice Shepard correctly writes that the purpose of the habeas corpus action was to terminate the guardianship. Over the years one may reasonably surmise that Patsy Revello was informed by her then husband's parents on many occasions that they, not she, had the legal right to the physical possession of the children. Such being so I am forced to the conclusion that the opinion authored by Justice Bakes hangs on the slim thread of a technicality, and· is not compatible with our civil rules of procedure, which require liberality in construction so as to secure the just, speedy and inexpensive determination of every action and proceeding. I.R.C.P. 1.

I write only to point out that the appeal record shows that the guardianship appointment was entered in the District Court of the Seventh Judicial District of the State of Idaho in and for the County of Bonneville on July 15, 1974. That order of appointment was based upon the separately filed acknowledged consents of Gary Joseph Revello and Patsy Revello, respectively dated the 27th day of May, 1974 and the 10th day of May, 1974. The consents are identical. Each contains the following statement:

"The undersigned does further acknowledge and agree that following their appointment as Coguardians, John Joseph Revello and Lucia Marchetti Revello, his wife, *shall continue to serve* in such capacity *unless and until the Court making the appointment shall direct or approve such other or different arrangement* as the Court deems proper." (Emphasis added.)

"The Court," of course, is the court shown in the caption of the consents, and is the identical court which entered the order of appointment, to-wit, the District Court, Seventh Judicial District, Bonneville County, Idaho.

It was in this particular district court that Patsy Revello sought *another or different arrangement*, specifically the termination of the guardianship and the return to her of her children.

It was the proper court, being the court which had made the appointment, and in fact the only court in the county wherein the children lived.

The pleading filed by the grandparents Revello, presumably responsive to Patsy's allegation that their restraint of the children was not legal, set up the fact of the consent guardianship in district court, attaching the copies of the consents and the order, adding to the title of the court "Magistrates Division A." However, this quoted

language appears nowhere on the consents or on the order.

Their pleading did not allege or claim that Patsy's action was barred by the prior order or that it was a collateral attack. On the contrary, the grandparents joined issue on Patsy's fitness to have custody and the best interest of the children.[1]

There is nothing in the record we review which shows that the grandparents ever claimed that the District Court, with Judge Reynold George presiding, was not the proper forum for a hearing the purpose of which was to ascertain if Patsy Revello was entitled to the return of her children. Not only was that issue not urged upon Judge George; in two respondents' briefs filed in this Court it has not here been raised. It ill behooves this Court to decide an important case on an issue not raised in this Court or in the court below.[2]

I concur with Justice Shepard's reasoning for reversing the district court judgment. The majority route, which would nullify

1. "Respondents further allege that the natural parents have abandoned, waived, surrendered, transferred and/or forfeited their right to demand custody of said children, and said parties are not fit and proper persons to have the custody of said children at this time, and that it is in the best interests of the welfare of said children that their custody and control remain with Respondents."

2. I am not unmindful that the guardianship order entered in district court appears to have been signed by a magistrate instead of a district judge. Magistrates are, of course, judges in the district court, and have varying jurisdictions throughout the seven districts of the state. Ordinarily they are confined to handling cases in the magistrate division of the district court, but this is not always so. Nothing in the record before us shows that the magistrate here exceeded his authority by entering the order which was entered. If he did so, then it was a void order. I think, however, that it little matters, because Judge George is a district judge and, although our system may not allow a magistrate to handle all matters in a district court, there is no curtailment preventing a district judge from so doing. Judge George saw Patsy's petition seeking to regain her children; although he could have, perhaps, referred it to a magistrate, he could also hear it, and in the interests of expeditious administration of justice, properly did so.

completely the trial below, and this appeal, and require Patsy to begin anew, does not comport with my views on conserving dwindling judicial resources, and is not in the best interests of the children.

The magistrate who entered the consent order for the consent guardianship had retired from his position in January, 1975, long before Patsy's action was filed. Judge George undoubtedly had the authority to refer this cause to a magistrate, but the magistrate would not have had any benefit of background of the case that the retired magistrate had from handling the original consent proceeding. Judge George made the correct determination—to take on the task himself, as a district court, of deciding the important question of whether the children should be returned to their mother. The alternative of leaving the decision to a magistrate with the attendant delay of an appeal within the district court to a district judge, and then on appeal to this Court, is far less acceptable where young children are concerned. Compare the time lapse of 30 months in *Mitchell v. Pincock*, 99 Idaho 56, 577 P.2d 343 (1978), to the time lapse of 15 months in *Andersen v. Crapo*, 99 Idaho 805, 589 P.2d 957 (1979), from the first filing in the habeas corpus petition until the ultimate disposition in this Court.

In this Court we are, by virtue of our supervisory administrative authority over the entire judicial system, well aware of dwindling judicial resources and should never search out technicality as a predicate for preventing a decision on the merits where the case brought to us has been well presented by the parties—obviously wanting a decision on the merits, not a dismissal with directions to start it all over.