**In re RESIDENTIAL AG, INC., Debtor.**

**No. 01–40510.**

United States Bankruptcy Court,
D. Idaho.

July 13, 2001.

Steven D. Peterson, Twin Falls, Idaho, for Doug Bybee and Thad Hull.

Laird B. Stone, Stephan, Kvanig, Stone & Trainor, Twin Falls, Idaho for Jim Guerry.

Jeffrey E. Rolig, Jeffrey E. Rolig, P.C., Twin Falls, Idaho, for Sanwa Bank California.

Craig W. Christensen, Craig W. Christensen, Chartered, Pocatello, Idaho, for J.R. Simplot Co.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

### I.   Background.

Three creditors, Doug Bybee, Jim Guerry and Thad Hull (collectively "the claim-

ants"), each move the Court for approval and payment of the farm labor liens they assert against the sale proceeds of Debtor's 2000 potato crop. Two other lien claimants, J.R. Simplot Co. ("Simplot") and Sanwa Bank California ("Sanwa"), object. The Court conducted an evidentiary hearing on the motions and objections on July 6, 2001. After due consideration, the following constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052; 9014.

## II. Facts.

The material facts may be stated simply and are largely undisputed. Debtor Residential Ag, Inc., a farming concern, raised potatoes in 2000. In connection with harvesting the crop, Debtor needed trucks and drivers. Debtor's manager, Greg Hull, hired Bybee, Guerry and Thad Hull (Greg's nephew). Each of these individuals provided a semi-truck, which they personally drove, to haul potatoes from a transloading station located on Debtor's farm properties[1] near Twin Falls to a private cellar approximately 20 miles away. In addition, Bybee and Guerry each provided a ten-wheeled truck and another driver to Debtor to haul potatoes from the harvesters in the fields to the transloading station. Finally, Thad Hull provided a dump truck to Debtor, but no driver, which was used to haul dirt from the transloader back to the fields. Debtor agreed these creditors would be paid the following amounts for their services and trucks: Bybee was to receive $8,533.00 for the ten-wheeler, and $1,800.00 for the semi-truck; Guerry was to receive $8,931.50 for the ten-wheeler and $1,824.00 for the semi-truck; and Thad Hull was to receive $5,436.60 for the dump truck and $1,905.70 for the semi-truck.

When the claimants were not driving their trucks, they helped out around the transloader making repairs and doing maintenance, or by sorting and cleaning the spuds as they came across the various conveyors. The creditors conceded they were not hired to perform this labor, but did so voluntarily because it was both the tradition at harvest to help out where needed, and because they preferred to stay busy rather than simply sitting by idly in the trucks.

Over the course of a harvest day, the dump truck would periodically become fully loaded with dirt from the transloader. No particular driver was assigned to this truck. Rather, whomever was available at that time, whether it be Thad Hull, one of the other truck drivers, Greg Hull, or some other volunteer, would then drive the truck to the field where the dirt was dumped, and then return the truck to the loading station. Thad Hull charged for the use of the dump truck by the load.

When they were not paid by Debtor as agreed, each of the individual creditors timely filed written notices with the Idaho Secretary of State claiming farm labor liens against Debtor's potato crop for the amount owed under Idaho Code § 45–301 *et seq.* A copy of the labor liens was sent by mail to Greg Hull.

Debtor filed for Chapter 11 relief on March 27, 2001. The potatoes have since been liquidated, and Debtor holds the proceeds subject to disbursement pursuant to further order of the Court. Needless to say, the proceeds from the crop are insufficient to pay all creditors' claims against the crop. Simplot and Sanwa each claim a

---

1. Debtor leased the various parcels of property on which it grew the potato crop. However, this fact is not material to the outcome of this action, since Debtor was in possession of these properties at the time of harvest.

consensual security interest in the proceeds to secure large amounts due for credit extended to Debtor.

Bybee, Guerry and Hull each filed a Motion for Approval and Payment of Lien (Docket Nos. 50, 59 and 48, respectively) in the bankruptcy case. Simplot and Sanwa originally objected to any payment of the claimants' charges from the potato proceeds. However, at the conclusion of the motion hearing, Simplot and Sanwa agreed that Bybee and Guerry held valid liens and should be paid for the charges asserted for Debtor's use of their ten-wheeler trucks for hauling spuds from the harvester to the transloader. The Court granted Bybee and Guerry's motions to that extent. The remaining issues, those involving amounts claimed due by Bybee, Guerry and Hull for Debtor's use of the semi-trucks, and by Hull for use of his dump truck, were taken under advisement.

## III. Discussion.

■ State law controls the validity and effect of liens in the bankruptcy context. *In re Southern California Plastics, Inc.,* 165 F.3d 1243, 1247 (9th Cir.1999). The applicable state law here is the so-called farm labor lien statute, Idaho Code § 45–303, which provides in pertinent part:

(1) Any person who performs farm labor on a farm in furtherance of production of a crop shall have a lien in the crop for the agreed or reasonable value of the labor.

(2) The farm laborer's lien shall have priority over any security interest in the same crop.

Sanwa and Simplot assert that the claimants are not protected by this statute because the they merely rented equipment to Debtor, and because Bybee, Guerry and Hull performed no labor of the type described in the lien statute. Therefore, the issue for the Court to determine is wheth-er the services provided by the claimants to Debtor constituted "farm labor," performed "on a farm," which was performed "in furtherance of production of a crop."

## A. Use of Semi–Trucks.

■ The parties have not cited, nor has the Court through its research been able to locate, case law interpreting Idaho Code § 45–303. However, the Idaho courts and this Court have considered the meaning of "labor" in interpreting the statute's predecessor, the former Idaho Code § 45–301. Former § 45–301 read in part "[a]ny person who does any labor on a farm or land in tilling the same, or in cultivating, harvesting, threshing, or housing any crop or crops raised thereon, has a lien on such crop or crops for such labor...." In *Mountain Ag, Inc. v. Arnold (In re Keith J. Arnold & Sons, Inc.),* 85 I.B.C.R. 90, 93 (Bankr.D.Idaho 1985) this Court held that a creditor did not provide any significant labor to the debtor by simply storing potatoes and renting equipment to the debtor, and therefore did not have a valid farm labor lien under former § 45–301. Specifically the Court stated:

Labor is the essential element of the lien under the statute. If services other than labor are furnished coincidental to the labor, Idaho law would allow such services to be included within the lien. However, the statute is not a lien statute for services without the essential element of labor.

*Id.* The Court relied upon *Chapman v. A.H. Averill Machinery Co.,* 28 Idaho 121, 152 P. 573, 575 (1915) in which the Idaho Supreme Court held that where work was done with the help of the claimant's teams of horses and machinery, rather than by the claimant's physical labor alone, the claimant was entitled to a lien on the crop for the value of the claimant's labor and use of his teams and machinery in harvest-

ing the farmer's crop. While the precise language of the statute was later amended, the Court concludes the fundamental purpose of the farm labor lien law remained the same. Therefore, the Court considers the cases cited above instructive in interpreting the current version of Idaho Code § 45–303.

Here, as to their agreement to provide the semi-trucks to Debtor, the Court is satisfied that the claimants provided farm labor to Debtor. This conclusion is consistent with the analysis found in *Mountain Ag* and *Chapman*. The record is clear that claimants provided not only their semi-trucks to Debtor, but also their personal labor in operating those trucks, in hauling the potatoes from the transloading station to the potato cellar. These services were not insignificant. The claimants made round trips of approximately forty miles to the potato cellar and back, in some cases several times per day. Nor was this labor a passive activity such as the creditor provided in *Mountain Ag*. A truck is the modern day equivalent to the teams of horses formerly used in farming operations, which the Idaho Supreme Court found as qualifying for lien protection in *Chapman*. Additionally, *Chapman* instructed that use of machinery in conjunction with labor entitled the creditor to a claim of lien.

Sanwa cites a number of Idaho Supreme Court cases discussing the former agricultural exemption to the Worker's Compensation Act which hold that transporting farm products is not an "agricultural pursuit" to support its assertion that the services here were not "farm labor on a farm." Memorandum of Sanwa Bank Opposing Farm Labor Liens, 3–5, Docket No. 65; *see, Kuhn v. Box Canyon Livestock, Inc.*, 102 Idaho 658, 637 P.2d 1154 (1981) (holding that hauling milk to the processor was not an incidental or necessary adjunct to the production of milk and was therefore not an agricultural pursuit); *Goodson v. L.W. Hult Produce Co.*, 97 Idaho 264, 543 P.2d 167 (1975) (holding operation in which potatoes were marketed was not an agricultural pursuit and employer was not exempt from the Worker's Compensation Act); *Backsen v. Blauser*, 95 Idaho 811, 520 P.2d 858 (1974) (holding the employer's business of transporting unprocessed agricultural products to delivery points did not relate to the raising or harvesting of agricultural products and did not constitute an agricultural pursuit); *Mulanix v. Falen*, 64 Idaho 293, 130 P.2d 866 (1942) (holding the act of delivering crops purchased, but not raised by the employer, was not an agricultural pursuit).

These cases are clearly not helpful in interpreting Idaho Code § 45–303. As Sanwa concedes, the statutory context of the foregoing cases is different from the case at bar. Former Idaho Code § 72–212(8) exempted "agricultural pursuits" from the coverage of the Worker's Compensation Act. Agricultural pursuits was defined to include "the raising or harvesting of any agricultural or horticultural commodity." *Goodson*, 543 P.2d at 170. In other words, in the context of worker's compensation, the Legislature had specifically declared that certain activities be *excluded* from coverage by the statute, and the cases cited attempt to implement that legislative intent to restrict operation of the statutes.

■ The farm labor lien statute is to be liberally construed in favor of the laborer. *Sage v. Richtron, Inc.*, 108 Idaho 837, 702 P.2d 875, 877 (1985); *Kerby v. Robinson*, 58 Idaho 781, 80 P.2d 33, 34 (1938). No legislative exclusions or exceptions are stated in the statutes. Rather, it is for the Courts to decide on a case-by-case basis whether application of the lien law to the particular type of services involved is con-

sistent with the purposes of the law. There is no reason in this case to apply a narrow construction to any element of the farm labor lien statute.

■ There are no cases discussing the meaning, as used in the statute, of the phrases "on a farm" or "in furtherance of production of a crop." The terms should be given their ordinary meaning. The record is clear that the claimants each provided some significant labor operating the trucks while on Debtor's farm, even though another substantial portion of their services were performed on the road to and from the cellar. A liberal construction of the farm labor lien statute requires the Court to conclude that claimants labor here was sufficient to satisfy the statute's requirement that it be performed "on the farm."

■ Finally, the record is also clear that transporting the potatoes to the cellar was an essential step in the production of the crop. Simplot argues that, in a strict sense, production of the potato crop was complete at the moment of harvest, removal of the spuds from the ground. However, this interpretation ignores the economic realities of agriculture. A farmer cannot obtain the financial benefit from a crop until it is planted, grown, harvested, and marketed. All steps along the way toward sale are integral in giving realistic meaning to the concept of "production of a crop." In this day and age, potatoes may commonly be stored for several months before marketing. This accepted approach to selling a crop necessarily involves transportation of the produce to a storage facility. The Court is confident the Legislature would have intended that, in enacting the lien statute, the process of transporting the potato crop to storage would be considered a critical part of the production of that crop.

Simplot argues that because Debtor had "sold" its crop to a processor, and because the crop was being delivered to a storage facility approved by the buyer, and because the buyer would eventually be responsible for payment of the storage fees, the analysis of the claimants' rights should be different. The Court respectfully disagrees. Perhaps the argument would merit consideration if the semi-trucks had been hired by the processor. That is not what happened here, since claimants and Debtor's agents agree the trucks and drivers were under contract to Debtor, not the buyer. There is also no dispute in the record that Debtor was contractually obliged to at least deliver the potatoes to storage. That being the case, the charges incurred in transporting the potatoes from farm to storage are covered by the lien statute for the reasons set forth above.

In sum, a liberal construction of the lien statute under the facts presented here requires the Court to conclude that the services provided by the claimants in hauling the potatoes to the potato cellar, and claimant's charges for those services, is covered by the farm labor lien under Idaho Code § 45–303 for the labor they provided in hauling the potatoes to the potato cellar.

**B. Rental of Thad Hull's Dump Truck.**

■ While the farm labor lien statute covers the use of the claimants semi-trucks and their services in driving those trucks, the Court must come to a different conclusion concerning the rental of Thad Hull's dump truck. In applying the analysis as described above concerning whether Thad Hull provided "farm labor," the Court is particularly guided by *Mountain Ag.* In that case, the Court held that where a mere rental of equipment is involved, and the creditor provided no significant per-

sonal services, the claimant could not assert a farm labor lien. 85 I.B.C.R. at 93.

The evidence presented at the hearing showed that Thad Hull did on occasion drive the dump truck to and from the field. He also did a daily maintenance check on the truck. However, under his agreement with Debtor, he was not required to perform any significant labor along with the rental of the dump truck. In fact, Mr. Hull's own written invoice for the rental charges for the dump truck specifically notes it excludes charges for a driver and maintenance. Exhibit 508. Any services Thad Hull provided in connection with the dump truck were purely voluntary and merely incidental to the purpose of the parties' agreement. The parties simply did not intend for Thad Hull or any other particular person to drive the truck to dump the dirt in the fields. The farm labor law is primarily to protect charges for labor, not for the rental of equipment. Under these facts, the Court holds that Thad Hull is not entitled to a lien under Idaho Code § 45–303 for rental of his dump truck to Debtor.

## IV. Conclusion.

The claimants each hold a valid statutory farm labor lien for hauling the potatoes from the transloader to the potato cellar. In this regard, the services they provided Debtor constituted farm labor, performed in significant part on a farm in furtherance of production of a crop. Based on this finding the Court will grant the claimants motions for approval and order payment of their liens for the charges for the semi-trucks in the following amounts: Doug Bybee $1800; Jim Guerry $1824; and Thad Hull $1905.70. By contrast, the Court concludes Thad Hull is not entitled to the benefit of a farm labor lien for rental of his dump truck to Debtor. As to those charges, Hull's motion will be denied.

The Court will enter a separate order.